The Northern Trust Company, as Trustee, Plaintiff-Appellee, v. Constance Biddle, et al., Defendants-Appellees. Adelheit von Hardenberg and Irmgard von Alten, Defendants-Appellants.

Gen. No. 49,921.

First District, Third Division.

December 9, 1965.

Thomas P. Sullivan and Hugh M. King, of Chicago (Raymond, Mayer, Jenner & Block and Roland Towle, of counsel), for appellant.

Schiff, Hardin, Waite, Dorschel & Britton, of Chicago (Lester G. Britton, of counsel), for plaintiff-appellee.

John W. Douglas, Assistant Attorney General of the United States, Edward V. Hanrahan, United States Attorney, of Chicago, and Sherman L. Cohn and Robert V. Zener, Attorneys for the Department of Justice, of Washington, for defendant-appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by Adelheit von Hardenberg and Irmgard von Alten, who were resident German nationals, from a decree directing that the trustee under the will of Louisa G. Bigelow distribute to the Office of Alien Property of the Attorney General of the United States, as successor to the Alien Property Custodian, their share of a trust created by the said will. The authority of the Attorney General to take this property rests on the provisions of the Trading with the Enemy Act. It is admitted that the case comes within the purview of the Act, but it is contended that a subsequent amendment divested the Attorney General of the right to take the property. This amendment, known as the Divestiture Act, was incorporated in Public Law 87–846, effective October 22, 1962, which added Section 40 to the Trading with the Enemy Act, 50 USCA App § 41. The principal issue is whether the language of the Divestiture Act which defined the property affected by it as those "rights and interests which have not become payable or deliverable to or have not vested in possession in the Attorney General prior to December 31, 1961," covers the property here in question.

The facts involved herein have been set forth at length in prior litigation concerning the Bigelow will. Orme v. Northern Trust Co., 410 Ill 354, 102 NE2d 335; cert den 343 US 921 (1952); Orme v. Northern Trust Co., 29 Ill App2d 75, 172 NE2d 413; 25 Ill2d 151, 183 NE2d 505; cert den 371 US 935 (1962). It will not be necessary

to repeat them at any length. Louisa G. Bigelow died in 1873, creating in her will a trust of which The Northern Trust Company is now trustee. The will provided that the income from the trust was to be paid to her three grandchildren and to their heirs upon the death of each grandchild, but that no distribution was to be made of the corpus until the death of all three grandchildren, at which time one-third of the corpus was to go to the children or heirs of each grandchild. One grandchild died in 1919; Louise De Haven, another grandchild and the mother of appellants, died in 1941; and the last grandchild died in 1951. Appellants are the only children of Louise De Haven.

In 1943 an action to construe the will of Louisa G. Bigelow (hereinafter called the Orme case) was commenced in the Circuit Court of this county and in that action the appellants were made parties defendant. Orme v. Northern Trust Co., 410 Ill 354, 102 NE2d 335. On March 29, 1949, and on April 27, 1949, the Attorney General of the United States, acting under the authority of the Trading with the Enemy Act, 50 USCA App § 1 et seq., issued orders vesting in him the interests which appellants had in the trust created by the Bigelow will. The Attorney General was substituted for appellants as defendant in the litigation concerning the construction of the will, and the order permitting the substitution, on the basis of appellants' interest in the trust having vested in the Attorney General, was sustained by the Supreme Court of this state. Orme v. Northern Trust Co., supra. In other words, the Supreme Court of Illinois held that the interest of the Attorney General was such as to warrant his substitution as defendant in the Orme litigation. Appellants were not removed from that case, however, but continued as defendants therein. The Supreme Court of the United States denied defendants' petition for a writ of certiorari, 343 US 921. A final decree in the will construction suit was entered in 1959 and the decree was

256

affirmed by this court (29 Ill App2d 75, 172 NE2d 413) and by the Supreme Court of Illinois (25 Ill2d 151, 183 NE2d 505).

The present action was commenced by the trustee in 1950 for instructions with respect to the administration of the estate and for a determination of the identity of the parties entitled to share in the distribution of the principal of the trust. The Attorney General answered, claiming the Louise De Haven share by reason of the vesting orders. The instant litigation made little progress through the years, since all parties awaited the outcome of the Orme litigation. After the mandate of the Supreme Court of Illinois was filed in that suit, appellants moved herein for summary judgment, claiming that the Attorney General had no present interest in the Louise De Haven share because that interst had been divested by the enactment of the divestiture amendment. Trading with the Enemy Act, § 40, 50 USCA App § 41. The motion for summary judgment was denied, a final decree was entered and this appeal ensued.

The divestiture amendment became effective on October 22, 1962, and the pertinent part thereof is as follows:

"Section 40(a) . . . all rights and interests of individuals in estates, [and] trusts . . . vested under this Act after December 17, 1941, which have not become payable or deliverable to or have not vested in possession in the Attorney General prior to December 31, 1961, are divested: *Provided*, That the provisions of this section shall not affect the right of the Attorney General to retain all such property rights and interests and to collect all income which is payable to or vested in possession in him prior to December 31, 1961." 50 USCA App § 41(a).

Appellants contend that the Louise De Haven share was neither "payable or deliverable" to the Attorney General nor vested in his possession on the cutoff date, because

on that date the Orme litigation was still pending and undetermined by the Supreme Court of Illinois and hence there was no binding judicial declaration of the rights of the parties prior to that date. To pass upon this contention, it is necessary to determine the types of interests Congress intended to be divested, and for this purpose a review of the legislative history of the enactment is required.

Following the initial passage of the Trading with the Enemy Act, numerous bills were introduced in Congress providing that the property seized under that Act should be used to indemnify citizens of the United States who had suffered war damage. The War Claims Act of 1948 (50 USCA App § 2001 et seq.) satisfied a limited number of these claims and provided that the proceeds of vested enemy assets be deposited in a War Claims Fund. A section of that Act prohibited the return of vested German and Japanese property to its former owners. In subsequent treaties with Germany and Japan, the United States agreed to forego any claims for war damage against the current production of those countries, and our former enemies agreed that their former assets could be used to pay war damage claims. In 1958 legislation was introduced to provide for a partial return of vested property as an act of grace, but it failed of enactment. No such legislation was passed until 1962, when Public Law 87–846 amended the War Claims Act and added Section 40(a) to the Trading with the Enemy Act.

The 1962 amendments authorized the Foreign Claims Settlement Commission to determine the validity and amount of claims and authorized the Attorney General to pay into the Treasury for deposit to the War Claims Fund the sums derived from property vested in him under the Trading with the Enemy Act. On June 30, 1962, there was available for transfer to the War Claims Fund, after final liquidation of the Office of Alien Property, an estimated balance of one hundred million dollars. The

amendment did not provide generally for a return of vested property to enemy nationals and left unchanged the provision which prohibits such a return. 50 USCA App § 39.

In the first session of the 87th Congress the House of Representatives passed various bills amending the Trading with the Enemy Act which contained no divesting provisions. In the Senate, however, bills were introduced to accomplish divestment of interests in estates and trusts established · by American citizens. Senate Bill 291 proposed an amendment which would have divested the Attorney General of any unliquidated interest in any trust the corpus of which was composed of assets *"provided* by any individual who at the time of the creation of such trust was a citizen or national of the United States, which has been vested under this Act after December 17, 1941, and has not been *reduced to possession* by any officer of the United States. . . ." (Emphasis added.)

In response to a request by the Senate, the Deputy Attorney General protested the use in the proposed Act of the phrase "reduced to possession," and urged the adoption of language now incorporated in Section 40 of the Trading with the Enemy Act; that is to say, the phrase "reduced to possession" was changed to "payable or deliverable to or have not vested in possession." See generally, Domke, "The War Claims Act of 1962." Am J Int L 354 (1963).

 "Reduction to possession" is defined in Black's Law Dictionary as "conversion of a right existing as a claim into actual custody and in enjoyment," and the Attorney General correctly pointed out that the use of the original language would cause the return of interests due but not yet collected. The phrase "vested in possession" is well understood as meaning "a right of present enjoyment." Smith v. West, 103 Ill 332; People v. Estate of Strom, 363 Ill 241, 2 NE2d 94; Golladay v.

Knock, 235 Ill 412, 85 NE 649; Fearne on Remainders, p 1. Contrasted with these terms is the phrase "vested in interest," which means a present fixed right of future enjoyment. Thus any given interest may first be vested in interest (as a vested remainder prior to termination of the preceding estate), then vested in possession (as a vested remainder upon termination of the preceding estate), and finally reduced to possession (as when distribution is made by the trustee). It is clear that the legislative intent was to divest the Attorney General where he was merely vested in interest, but not where he was vested in possession.

The most recent case on the subject is Estate of Hogemann, 403 P2d 405, 45 Cal Rptr 149, Supreme Court of California, July 2, 1965, reversing a decision by the appellate court (41 Cal Rptr 246). In that case the trial court held that under California law, a legacy was not payable or distributable prior to the probate court's decree of distribution, and was not vested in possession and hence that the Divestiture Act applied. The appellate court affirmed. The reasoning was that the legatee had no action against the executor or administrator for recovery until a decree of distribution was made effective. The decision was rendered during the pendency of the case in this court and was brought to our attention by the Attorney General in his brief. He argued that the availability of a suit against the trustee distinguishes the instant case from the Hogemann case. Appellants, on the other hand, argued that the Hogemann case was "strikingly similar to the case at bar, and deserves the careful consideration of this Court," urging, however, that they had a much clearer case for divestiture than the Hogemann case. After the briefs had been filed in the instant case, the California Supreme Court reversed the appellate court and held that the Divestiture Act did not apply. The court referred to the legislative history which

we have before discussed and said (403 P2d at 407–408, 45 Cal Rptr at 151–152) :

> "The language proposed by the Department of Justice to effect this change was adopted verbatim by Congress in the final form of Public Law 87–846. Yet under respondents' view this deliberate alteration of wording would serve only the trivial purpose, in the present context, of guarding against the possibility that the cutoff date might occur for some estates during the brief period between entry of the decree of distribution and the writing of a check by the administrator in accordance with that decree. Nothing in the language or history of the statute compels such a narrow limitation of its scope."

In a memorandum furnished to this court subsequent to the decision of the Supreme Court in the Hogemann case, appellants point out a number of distinctions between the two cases. The main question involved, however, was the meaning of the phrases "payable and deliverable," and "vested in possession," and in that respect the California court's decision is persuasive here.

There are a number of decisions of the United States Supreme Court, United States v. Jones, 236 US 106 (1915) ; McCoach v. Pratt, 236 US 562 (1915) ; Simpson v. United States, 252 US 547 (1920) ; Kahn v. United States, 257 US 244 (1921) ; Woerishoffer v. United States, 269 US 102 (1925), which have construed the words "absolutely vested in possession or enjoyment" as contained in an Act which repealed an inheritance tax levied during the Spanish-American War. These cases relate to the time, manner and conditions under which a probate estate may be distributed, rather than to rights accruing to remaindermen of a trust. Here, the only period of time required to pass before the re-

■■

mainder interest under the Bigelow will became vested in possession was the lifetime of the last life tenant.

Appellants argue vigorously that the Orme litigation prevented the Attorney General from being vested in possession of the Louise De Haven share on December 31, 1961 (on which date the Orme appeal was pending in the Illinois Supreme Court) because that share was being claimed in toto by one party to the suit, was also being claimed partially by another, and the scope of the vesting order was still in dispute. They claim that vesting did not occur until there was a binding declaration of rights by the Illinois Supreme Court. They point out that various orders entered in the Orme suit stayed distribution of the share pending a final order in this proceeding. Appellants concede that had there been no litigation, the Louise De Haven share would have vested in the possession of the Attorney General upon the death of the last Bigelow grandchild in 1951.

■ ■ The argument of appellants is based on what we consider to be a false premise; namely, that it was the decree in the Orme case which *created* the rights of the various parties. On the contrary, the rights and status of the parties were created by the Bigelow will and were fixed as of the time the last grandchild died. The Orme case so declared. Under common usage, an interest ceases being a remainder or a future interest and becomes a present interest upon termination of the precedent estate. The right of possession and of present enjoyment accrue at that time. The construction of the instrument creating the right may require the aid of a court, and litigation may postpone the actual custody or enjoyment of the right and may be necessary to determine the identity of the holder of the right, but the right of present enjoyment is fixed when the precedent estate determines. There is nothing in the language or legislative history of Section 40 (a) which would make it appear that Congress intended otherwise than to give the phrase "vested in

possession" its ordinary meaning in the law. Appellants' argument would require us to find that Congress intended "vested in possession" to mean "a right of present enjoyment, to the realization of which there are no legal obstacles." The logical conclusion to this approach would mean that any action, no matter how frivolous or ill-conceived, which had the effect of delaying distribution beyond the cutoff date would be sufficient to divest the Attorney General. It is not conceivable that Congress would so intend.

■ It is our conclusion that Section 40(a) of the Trading with the Enemy Act preserves in the Attorney General those interests with respect to which the right to possession had accrued, even though actual reduction to possession had been delayed by litigation involving the title to such interest, and that the interest of appellants in the Louise De Haven share was vested in possession in the Attorney General on December 31, 1961, within the meaning of that Act.

Appellants also charge error in the chancellor's order approving payment to the trustee out of the trust funds of a distribution or termination fee of $10,672. As we have found that the title to the interest in question is in the Attorney General and as he has not objected to this fee, it is not necessary for us to consider this phase of the case.

The decree is affirmed.

Decree affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.