STEPHEN B. MANN et al., Plaintiffs-Appellees and Defendants-Appellees, v. JOHN BERRY MANN et al., Defendants-Appellants and Plaintiffs-Appellants.

Third District    No. 3—96—0108

Opinion filed September 26, 1996.

916

James R. Lindig (argued), of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellants.

Joseph P. Hettel (argued), of Armstrong & Surin, of Ottawa, for appellees.

JUSTICE MICHELA delivered the opinion of the court:

Stephen B. Mann and his son Stanley Mann (plaintiffs) filed a complaint in forcible entry and detainer (735 ILCS 5/9—101 *et seq.* (West 1994)) against their brother and uncle, John Berry Mann, and his wife, Mary L. Mann (defendants). Defendants also filed a complaint in forcible entry and detainer against the plaintiffs (735 ILCS 5/9—101 *et seq.* (West 1994)). Upon the agreement of the parties, the cases were consolidated for a bench trial. Plaintiffs, as lessees, sought to enforce the terms of a written "Crop Share Farm Lease" (lease) executed with John Mann, the father of plaintiff Stephen and defendant John Berry, which allowed them to farm land known as "parcel number five" (the realty) for a term of 15 years. Defendants succeeded to the title of the realty upon the death of John Mann and sought to terminate the lease upon the ground that the leasehold was a tenancy at will; alternatively, defendants contended the lease was terminable because the plaintiffs were in breach of the terms of the lease. The trial court ruled the lease was a tenancy for years and enforceable against both plaintiffs and defendants for the duration of the leasehold. The trial court further found plaintiffs were not in breach of the lease and, alternatively, ruled that if a breach did occur, it was immaterial and entered judgment in favor of plaintiffs. Defendants appeal the judgment and certain evidentiary rulings rendered by the trial court. We affirm.

The lease was properly executed between John Mann and plaintiffs on June 10, 1993, and properly recorded on June 11, 1993, at 2:56 p.m. A term in the lease provided that the lessees were to submit annual reports to the lessor on forms provided by the lessor. During a second transaction on or about June 10, 1993, John Mann executed a quitclaim deed (deed two) conveying the realty to the defendants, reserving a life estate in himself and expressly providing that "[t]his conveyance is made subject to the terms of the [lease]." Deed two was also properly recorded on June 11, 1993, at 3:03 p.m. John Mann died on November 15, 1993. On September 22, 1994, defendants notified plaintiffs of their intent to terminate the lease and provided further notice of the termination by letter on March 24, 1995, claiming plaintiffs were in breach of the lease for their failure to provide the lessor with an annual report concerning finances and recordkeeping.

At trial, plaintiff Stephen testified he had farmed the realty under an oral lease agreement with John Mann since 1980. During cross-examination, Stephen was asked why he and his father decided to execute a written lease after farming the realty under an oral lease for 13 years. Plaintiffs' counsel objected on the basis of relevancy and defendants argued the answer was relevant to construing John Mann's intent in executing the lease and deed two. The trial court sustained the objection.

During defendants' case in chief they unsuccessfully sought admission of two legal documents, John Mann's will and a third quitclaim deed (deed three), which was also executed by John Mann on or about June 10, 1993, and recorded after 3:03 p.m. on June 11, 1993. Defendants argued deed three was contemporaneous with both the lease and deed two. Defendants reasoned deed three would be helpful in resolving any ambiguity caused by the lease and its impact upon their possessory interest in the realty. The trial court ruled that this extrinsic evidence was inadmissible because the lease and deed two were not ambiguous and John Mann's intent as both grantor and lessor must be construed from the words of the documents themselves.

■ We first address defendants' argument that the trial court committed reversible error in refusing to admit John Mann's will and deed three into evidence. We do not dispute defendants' reliance on the long-standing principle that "deeds and contracts executed contemporaneously, must be construed together." *Clodfelter v. Van Fossan*, 394 Ill. 29, 34, 67 N.E.2d 182, 184 (1946). However, it is an equally long-standing principle that "the nature and extent of the estate granted shall be determined, as a matter of law, from the deed itself." *Rockford Trust Co. v. Moon*, 370 Ill. 250, 253, 18 N.E.2d 447, 448-49 (1938). Further, the grantor's intent is to be construed from the four corners of the deed. See generally *Rockford Trust Co.*, 370 Ill. at 253, 18 N.E.2d at 449. If, however, a deed is ambiguous, extrinsic or parol evidence may be used. *Foster v. Foster*, 273 Ill. App. 3d 106, 112, 652 N.E.2d 350, 354 (1995).

■ Similarly, the intentions of the parties to a contract, such as a lease, are to be determined from the document itself. *Mayol v. Weiner Cos.*, 98 Ill. App. 3d 985, 986-87, 425 N.E.2d 45, 47 (1981). In the event of an ambiguity within the lease, extrinsic evidence may be used. *Mayol*, 98 Ill. App. 3d at 987, 425 N.E.2d at 47. Evidentiary rulings are within the discretion of the trial court and, absent an abuse of discretion resulting in prejudice to the objecting party, the rulings will not be disturbed on appeal. *Smith v. Black & Decker (U.S.), Inc.*, 272 Ill. App. 3d 451, 650 N.E.2d 1108 (1995).

■ The trial court did not abuse its discretion in refusing to admit copies of John Mann's will and deed three. The lease speaks for itself. There is no ambiguity in its terms that plaintiffs Stephen and Stanley shall farm the realty for 15 years. Likewise, deed two is unambiguous. Deed two conveys the realty to defendants John Berry and Mary, reserving a life estate in the grantor, John Mann. This deed also makes the conveyance of the realty subject to the terms of the lease. These documents, when construed together as contemporaneous written instruments, indicate John Mann wished one son to farm the realty for 15 years while he wished for another son to own the realty in fee. These documents further indicate that John Mann foresaw the contingency of his death during the leasehold's term. Thus, the provisions of deed two indicate John Mann's intent upon the event of his death.

Deed two unambiguously demonstrates that if John Mann died during the life of the leasehold, he intended the remaindermen to honor the terms of the leasehold agreement. On their face, these documents present no ambiguity. Thus, the trial court did not abuse its discretion in refusing to admit John Mann's will and deed three. Nor do we agree the trial court abused its discretion in sustaining plaintiffs' objection to defendants' query to Stephen on cross-examination as to why John Mann wanted to execute a written lease. This question's only purpose was to delve into the grantor's intent, which the trial court, in its sound discretion, deemed irrelevant in the absence of any ambiguity within the lease and deed two. *Smith*, 272 Ill. App. 3d at 458, 650 N.E.2d at 1114-15.

■ Defendants next contend the trial court erred when it found the realty remained subject to the leasehold agreement. Specifically, defendants argue that "a life tenant cannot make a lease for a longer period than his own term unless joined by the remainderman, and his lessee, upon the death of the life tenant, becomes a tenant by sufferance or at will." *Craig v. Launer*, 346 Ill. App. 234, 240, 104 N.E.2d 830, 832 (1952). Defendants maintain that as remaindermen they are bound to a nonfreehold estate that will last for a term longer than John Mann's life. Defendants further contend that since they were not a party to the lease at its execution and because they have succeeded to title in the realty, the leasehold has been transformed into a tenancy at will. Defendants therefore conclude the lease is terminable upon their election. Upon a close analysis of the documents, the times they were recorded and the resulting legal positions of the parties, we disagree.

Before the lease was executed and recorded, John Mann owned the realty in fee. John Mann then executed a lease with plaintiffs

permitting them to farm the realty from March 1, 1994, to February 28, 2009. The lease was a term for years, which has as its distinctive feature, "the right of the tenant to exclusive possession of a defined physical area for the duration of the specified term." C. Moynihan, Introduction to the Law of Real Property 63 (1988); *People v. May*, 46 Ill. 2d 120, 124, 262 N.E.2d 908, 910 (1970). Thus, the effect of the lease was to carve out a term for years leaving John Mann, as lessor, with a reversion in fee simple.

Seven minutes later, John Mann transferred his reversion in fee simple to the defendants, reserving a life estate in himself. Thus, John Mann kept a life estate in his reversionary interest in fee simple to the realty, subject to the leasehold's term for 15 years. Therefore, the defendants, as grantees, took a vested remainder interest in fee simple subject to postponed enjoyment. "A remainder is vested if there is a person in being ascertained and ready to take who has a present right of future enjoyment, one which is not dependent upon any uncertain event or contingency." *Dauer v. Butera*, 267 Ill. App. 3d 539, 543, 642 N.E.2d 848, 850 (1994). However, the defendants' remainder interest in possession, although vested, does not mean they were seized, *i.e.*, immediately entitled to possession of the realty upon John Mann's death. *Dalton v. Eash*, 411 Ill. 296, 103 N.E.2d 483 (1952). John Mann used words of limitation when he executed deed two which expressly provided that the conveyance of the realty was subject to the duration of the leasehold.

We conclude that although the defendants had a vested interest in possession to the realty or, put another way, a present fixed right of future enjoyment (*Northern Trust Co. v. Biddle*, 65 Ill. App. 2d 253, 212 N.E.2d 694 (1965)), their right to enjoy the possession of the realty was postponed. See generally 28 Am. Jur. 2d *Estates* § 256 (1966). Accordingly, the result in the case at bar is that upon John Mann's death, defendants, being vested, took title in fee simple to the realty but their right to enjoy possession of the realty is postponed for the duration of the leasehold's term for 15 years. Defendants cannot hasten their enjoyment of their possessory interest to the realty by relying upon the rule of law announced in *Craig v. Launer*.

*Craig v. Launer* is factually distinguishable from the case at bar. There, the defendant tenant, Launer, farmed land pursuant to an oral periodic tenancy lease agreement with the lessor. Upon the lessor's death, the land was devised to his wife for her life. The wife continued to accept rents from the tenant under the preexisting oral lease. The wife died and the land was devised to plaintiff Craig for her life. However, the defendant tenant, Launer, continued farming the land after the wife's death pursuant to the oral lease agreement.

The defendant tenant, Launer, refused to surrender possession of the land and the plaintiff lessor, Craig, brought an action in forcible entry and detainer. The court ruled in the plaintiff's favor.

The court found that the lessor's wife, as a life tenant, had continued the oral periodic tenancy agreement through her consent to the tenant's use of the land and acceptance of rents. The wife's possessory interest in the land only existed for the duration of her life. Thus, the court ruled that when the wife permitted the oral periodic tenancy, an estate of indefinite duration to continue, she had improperly bound the remainderman to the leasehold because it lasted for a term greater than her possessory interest in the land. The court then concluded that the leasehold was terminable as a tenancy at will or a tenancy by sufferance when it invoked the general rule that while a life estate retains the quality of alienability enabling the life tenant to convey his estate to a third person, the life tenant cannot convey a greater estate than his own. *Launer*, 346 Ill. App. at 240, 104 N.E.2d at 832; see C. Moynihan, Introduction to the Law of Real Property 53 (1988).

Conversely, in the case at bar, John Mann executed a written lease for a term for years which was recorded before deed two, establishing that, unlike *Craig v. Launer*, John Mann was not a life tenant when he executed deed two and conveyed his reversionary interest in fee simple to the realty. Moreover, the plaintiffs, unlike the lessee in *Craig v. Launer*, had an estate in land of finite duration conferring them with the exclusive right of the use and possession of the realty for 15 years. *8930 South Harlem, Ltd. v. Moore*, 77 Ill. 2d 212, 220, 396 N.E.2d 1, 5 (1979). Accordingly, John Mann conveyed his reversionary interest in fee simple with words of limitation, postponing defendants' right to enjoy possession of the realty for the duration of the leasehold. Because these differences are significant, we decline to apply the rule announced in *Craig v. Launer*.

Finally, neither party has directed our attention to any precedent, nor could we locate any such precedent, standing for the proposition that a grantor cannot convey his reversionary interest in fee simple subject to postponed enjoyment for the duration of a preexisting leasehold's term for years. Therefore, we hold the trial court did not err in finding that the tenancy for years did not terminate upon the death of the lessor. We also hold the trial court correctly ruled that defendants' possessory interest in the realty was postponed for the duration of the preexisting leasehold agreement for a term of 15 years. See Restatement (Second) of Property § 15.1, Illustration 12, at 90 (1977).

■ Next, we address defendants' argument that the trial court

erred in holding that the lease agreement was not breached or, alternatively, was not materially breached by the plaintiffs' failure to tender an annual financial report to the lessor as required by the terms of the lease. Plaintiff Stephen testified at trial that he understood that the lease required him to provide an annual report to the lessor by December 31, for each year comprising the 15-year term of the leasehold. Stephen testified he provided his father John Mann, as lessor, with such a final accounting in 1993. Stephen further testified that he kept records and receipts of crop production for 1995. However, defendants never requested plaintiffs to submit an annual report, nor did defendants provide annual report forms to plaintiffs.

We agree with the trial court that the lease was not materially breached. The record irrefutably demonstrates that plaintiff Stephen kept records and receipts of crop production for the 1995 year. Additionally, Stephen apportioned the lessor's share of the crops to defendant John Berry. John Berry received this payment and the remainder of his share was placed in storage. In effect, Stephen performed his contractual obligation by maintaining financial records and farming the realty so that the payment terms of the lease were honored. Therefore, we cannot say that the trial court erred when it found that if a breach occurred when Stephen did not tender an annual report, it was immaterial.

For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed.

Affirmed.

McCUSKEY and LYTTON, JJ., concur.