**In the Matter of Margaret WILLIAMS,**

**Debtor–Appellee,**

**Appeal of CHICAGO HOUSING AUTHORITY.**

No. 97–2082.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1998.

Decided May 20, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied July 16, 1998.

Nancy K. Lauréto (argued), Scott E. Turner, Maria T. Olea Baguio, Chicago Housing Authority, Chicago, IL, for Appellant.

David Yen (argued), Lawrence D. Wood, Legal Assistance Foundation of Chicago, Chicago, IL, for Debtor–Appellee.

Before RIPPLE, MANION, and EVANS, Circuit Judges.

MANION, Circuit Judge.

Margaret Williams rented a subsidized apartment from the Chicago Housing Authority (CHA). After CHA filed a "forcible entry" action in an Illinois state court but before it got a judgment of possession, Williams filed a Chapter 13 bankruptcy petition. CHA asked the bankruptcy court to modify the automatic stay so that it could continue its state court action. The bankruptcy court agreed, but on appeal the district court reversed. Because we conclude that the bankruptcy court did not abuse its discretion in modifying the automatic stay to allow the state court to determine the right of possession, we reverse the district court's contrary holding.

## I. Background

The record in this case is largely undeveloped, but the essential facts are not in dispute. Margaret Williams is a 43–year–old disabled woman whose only source of income seems to be federal SSI disability benefits of about $470 per month and $65 per month in food stamps. Williams first rented an apartment from CHA in November 1991. Her apartment is subsidized, so Williams' rent was based on a percentage of her income. (During the relevant period, her rent was $108 per month.) Williams could terminate the lease at any time by giving 15 days' notice. CHA could terminate the lease or refuse to renew it only for "good cause." If CHA terminated the lease for Williams' not paying rent, it had to give her 14 days' notice.

Williams did not pay any rent after March 1995 and by January 1996 she was $956 behind. On January 11, 1996, CHA served Williams notice demanding full payment of all rent then due. The notice stated that if Williams did not timely pay "[her] lease of said premises will be terminated on the day following the expiration of said 14 days after service of this Notice upon [her]." Williams did not pay, and on March 8, 1996, CHA filed an action under Illinois' Forcible Entry and Detainer Act, 735 ILCS 5/9–101 *et seq.*, against Williams in the Cook County (Illinois) Circuit Court seeking to evict her. CHA filed a motion for summary judgment, which was set for a hearing on August 8, 1996. On August 5, Williams filed her Chapter 13 bankruptcy petition, and the automatic stay of 11 U.S.C. § 362(a) halted the state action. On August 19, CHA moved the bankruptcy court to modify the automatic stay to allow the state court action to continue in order to determine whether she had a

right to retain possession. The bankruptcy court granted the motion, but Williams appealed and the district court reversed, reinstating the stay. CHA then timely appealed to this court.

## II. Analysis

When a debtor files a bankruptcy petition, the automatic stay prohibits, among other things, "commencement or continuation ... of a judicial ... action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). This stay covered CHA's pending forcible entry action. *See Robinson v. Chicago Housing Authority*, 54 F.3d 316, 317–18 (7th Cir.1995). Unless otherwise ordered by the bankruptcy court, the automatic stay continues until the property in question is no longer property of the estate, the case is closed or dismissed, or (for a Chapter 13 proceeding) a discharge is granted or denied. 11 U.S.C. § 362(c). But one need not wait until the stay expires on its own because 11 U.S.C. § 362(d) provides that:

> On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a), such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

(Emphasis supplied.) Although this section is written in mandatory terms, the bankruptcy court has discretion whether and to what extent it will grant relief from the stay, so our review is limited to whether the court abused that discretion. *See In re C & S Grain Co.*, 47 F.3d 233, 237–38 (7th Cir. 1995); *Mendoza v. Temple–Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1270 (5th Cir.1997) ("bankruptcy courts should be afforded the latitude to fashion remedies they consider appropriate under the circumstances"). CHA argues that the bankruptcy court did not abuse its discretion in modifying the stay because Williams' lease had terminated, and so she had no interest that could be assumed as part of her bankruptcy estate. Williams argues that because her lease had not terminated with an order for

possession, the bankruptcy court abused its discretion in modifying the stay. The parties' arguments are based on the ability of a trustee or Chapter 13 debtor to assume the debtor's lease. As we shall see, an unexpired lease is an assumable asset for the trustee (or Chapter 13 debtors) while an expired one is not. CHA's primary argument is that it was entitled to relief from the automatic stay because Williams' "lease" had no value to assume in her Chapter 13 plan. We begin our analysis by looking at the Bankruptcy Code's rules for assuming a lease.

Subject to the bankruptcy court's approval and with some exceptions, a bankruptcy trustee "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). And a Chapter 13 debtor such as Williams may in the plan of reorganization, "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under that section." 11 U.S.C. § 1322(b)(7). A lease can be assumed only if it is "unexpired," which the Bankruptcy Code does not define, but presumably it includes a lease that retains some assignable value. In *Robinson*, we explained that "[i]n the usual interpretation of § 365(a), courts look to state law to determine whether the lease is 'unexpired.' The question is whether the lease has ended under state law." 54 F.3d at 319. The parties agree that Illinois is the applicable state law under which to analyze Williams' lease.

The parties' arguments assume that whether Williams' lease was "terminated" prior to her filing her bankruptcy petition is the sole and dispositive question in this appeal. Although that question is relevant, it is not dispositive. We are not reviewing a motion to confirm Williams' plan; thus the ultimate issue of whether the lease is "unexpired," and therefore assumable under § 365, is not before us. What we are reviewing is the bankruptcy court's modification of the automatic stay. To do that we have to determine if the open question of whether Williams' lease ended is "cause" for the bankruptcy court to modify the automatic stay under 11 U.S.C. § 362(d) to permit the state

court to answer that question. *Mendoza*, 111 F.3d at 1271 (" 'desire to permit an action to proceed to completion in another tribunal may provide another cause [under § 362(d) ].' " (quoting H.R. Rep. 95–595 at 343 (1977))).

■ In Illinois, "[a] lease is an agreement which gives rise to the relationship of landlord and tenant. It is essentially a type of contract and, as such, it is governed by the rules which govern contracts generally." *Midland Mgmt. Co. v. Helgason*, 158 Ill.2d 98, 196 Ill.Dec. 671, 630 N.E.2d 836, 839 (1994) (citations omitted). And "[t]he principal function of the court in construing a lease is to give effect to the intention of the parties as expressed in the language of the document when read as a whole." *Id.* Thus, under Illinois law, when analyzing whether a lease has ended, the first and most important question is whether the lease ended under its terms. Williams' lease had. When Williams failed to pay her rent, the lease permitted CHA to terminate it by providing 14 days' notice, which CHA did. Williams does not dispute that the lease ended under its terms.

But Illinois, like many states, has enacted legislation to regulate landlord-tenant relations. Thus, under Illinois law, an important second question is whether CHA complied with the statutory requirements when it terminated Williams' lease. Where a landlord seeks to terminate a lease for nonpayment, the Forcible Entry and Detainer Act provides:

> A landlord or his agent may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than five days after service thereof, the lease will be terminated. If the tenant does not, within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for possession under the statute in relation to forcible entry and detainer. . . .

735 ILCS 5/9–209. The 14–day notice that CHA gave Williams was longer than the minimum required by the statute, so that is no bar to ending her lease. But Williams' argument does not rely on whether CHA gave proper notice. Rather, she argues that until a landlord obtains a judgment of possession, the lease is not finally "terminated" under Illinois law. Therefore, for purposes of § 365, the lease is "unexpired" and so, theoretically at least, whatever value the lease has could be assumed as part of the Chapter 13 debtor's plan. To analyze this argument, we examine the Forcible Entry and Detainer Act and how it altered the common law.

■ Unless a lease ends, the tenant's leasehold gives her a right of possession superior to the landlord. *See, e.g., First Nat'l Bank of Evergreen Park v. Chrysler Realty Corp.*, 168 Ill.App.3d 784, 119 Ill.Dec. 439, 522 N.E.2d 1298, 1304 (1988). Because the leasehold of a tenant like Williams is created by the lease, her right to possession is coterminous to the life of the lease: when the lease ends, her superior right of possession ends. "The common law permitted an individual, who was rightfully entitled to enter upon land, to do so with force and arms and retain possession by force." *First Nat'l Bank*, 119 Ill.Dec. 439, 522 N.E.2d at 1302. So under the common law, after CHA terminated Williams' lease, it would have had the right to use force or other self-help to drive Williams from her apartment and keep her out. But the Forcible Entry and Detainer Act, 735 ILCS 5/9–101, took away this unfettered right. *Yale Tavern, Inc. v. Cosmopolitan Nat'l Bank*, 259 Ill.App.3d 965, 198 Ill. Dec. 21, 632 N.E.2d 80, 85 (1994) ("The purpose of the statute is to quickly restore an aggrieved party to possession of his land and to prevent breaches of the peace caused by the common law method of regaining possession of property through self-help."); *First Nat'l Bank*, 119 Ill.Dec. 439, 522 N.E.2d at 1302. Now for an Illinois landlord to evict a tenant, it must file a forcible entry action, which can be brought by "[t]he person entitled to possession of lands or tenements," among other times, "[w]hen any lessee of the lands or tenements . . . holds possession without right *after the termination of the lease*. . . ." 735 ILCS 5/9–102(a)(4) (emphasis supplied). Once the landlord gets a judgment of possession, it gets a writ of possession and can evict the tenant. The sole issue

governed by the Act is possession. *Yale Tavern,* 198 Ill.Dec. 21, 632 N.E.2d at 85. To avoid breaches of the peace that could include physical confrontation, a judicial determination would allow the police to enforce the order if necessary.

Williams correctly points out that the defendant (tenant) to a forcible entry action has various defenses, which, if successful, prevent the landlord from getting its judgment of possession. Williams thus argues that a lease is not finally and completely "terminated" until the landlord gets its judgment of possession. CHA argues that the lease "terminates" after the notice period passes or, in the alternative, when the landlord files its forcible entry action (presumably when the tenant wrongfully holds possession after termination). Before turning to these arguments, we note that the authorities on which the parties rely do not with certainty establish a general rule for when all leases "terminate" under Illinois law. This is not surprising because when leases actually terminate often depends on certain facts involved with each case. Moreover, the relevant question here is whether *Williams'* lease ended prior to her filing her bankruptcy petition.

When the landlord seeks to evict a tenant for not paying rent, there are three relevant periods in the forcible entry procedure: The first period would be after the landlord serves the notice on the tenant demanding payment but before the notice period passes. (Here that would have been the 14-day period from January 11, 1996, when the notice was given, through January 25, 1996.) The second period would be after the notice period expired and before the landlord got a judgment of possession. (That is the period at issue here.) The third period would be after the landlord gets its judgment of possession. During the first period, the lease has not ended. Even if, under its terms, a lease could be ended for non-payment without notice or with some shorter notice, the statute gives the tenant at least five days (here the notice gave 14 days) in which to pay the past due rent and save her lease.[1] On the other hand, during the third period

the lease has definitely ended. *Robinson,* 54 F.3d at 322 (once the landlord had obtained a judgment of possession, the lease is expired and could not be assumed under § 365; at that point there is no "recourse left for the tenant to revive the lease").

But during the second period—the period relevant to this case—whether the lease has ended is not clear. Before the landlord gets a judgment of possession, a tenant might assert defenses to the forcible entry action and might win, thus preserving the lease. Based on this possibility, Williams argues, relying on our language from *Robinson,* that before a landlord gets a judgment, a tenant has a "viable possibility" of preserving the lease, and so it is not ended. *See Robinson,* 54 F.3d at 321 ("[W]here there is a viable possibility that the tenant could still take action to preserve the lease, the lease has not been terminated."). We agree that before the landlord gets a judgment, the tenant *might* have a "viable possibility" of reviving her lease. But the mere fact that a landlord has not yet gotten a judgment is not conclusive: whether the tenant can revive the lease depends on whether she has a "viable" defense.

Illinois recognizes many different defenses to a forcible entry action. A tenant may be able to prove that the lease never actually ended. *E.g., Mann v. Mann,* 283 Ill.App.3d 915, 219 Ill.Dec. 408, 671 N.E.2d 73, 78 (1996) (a breach of the lease is not a sufficient basis for landlord to terminate if the breach is immaterial). Also, a tenant can show that even where a landlord properly ended a lease, his subsequent acceptance of rent waived the termination. *E.g., Midland Mgmt. Co.,* 196 Ill.Dec. 671, 630 N.E.2d at 839. Another defense is "retaliatory eviction." *See Wood v. Wood,* 284 Ill.App.3d 718, 219 Ill.Dec. 877, 672 N.E.2d 385, 390 (1996) (the court expanded the coverage of Illinois' Retaliatory Eviction Act to include retaliation for getting a protective order; the more common retaliation is eviction when a tenant complains about violations, such as of the building code). Of course the tenant must succeed on the merits; if the proffered de-

---

1. We can assume without deciding that if a tenant files a bankruptcy petition prior to the notice period passing, the period would extend under 11 U.S.C. § 108.

fense fails, the landlord is entitled to its judgment. *See Midland Mgmt.*, 196 Ill.Dec. 671, 630 N.E.2d at 841.

There are no doubt other potential defenses to a forcible entry action, but the three we have discussed are sufficient for our analysis. Whether a lease ended can only be determined by determining the merits of the tenant's defenses. Thus it is not particularly significant when leases in general end under Illinois law. In Illinois, a lease ends according to its terms, unless so ending is contrary to Illinois law. The germane question here is whether *Williams'* lease ended prior to her filing her bankruptcy petition. Under its own terms, it did. So the only question left is whether Illinois law would void that ending, which question can only be answered by looking at Williams' defenses to the forcible entry action. If she has no viable defense, then nothing in Illinois law would invalidate CHA's ending Williams' lease, and CHA would ultimately be entitled to a judgment of possession.[2]

For whatever reason, Williams' brief on appeal does not assert what, if any, defense she has to CHA's forcible entry action.[3] When questioned at oral argument, however, Williams' counsel asserted that she had two possible defenses: (1) CHA failed to provide adequate notice that it was terminating the lease; and (2) an "equitable defense." The first defense is always a possibility. *See Avdich v. Kleinert,* 69 Ill.2d 1, 12 Ill.Dec. 700, 370 N.E.2d 504, 508 (1977) (forcible entry action must be dismissed if it is filed prior to statutory notice and passing of 5–day period); *North American Roman Catholic Church v. Bernadette,* 194 Ill.Dec. 452, 253 Ill.App.3d 278, 627 N.E.2d 1094, 1100 (Ill. App.1992) (although recognizing improper notice as a defense, defendant must present evidence to support defense against motion for summary judgment). But it is not clear that Williams' "equitable defense" is also a possibility. At oral argument, Williams' counsel asserted that under Illinois law if a lease had terminated but it would be "inequitable" to forfeit the lease, the Illinois courts would not enforce the forfeiture. But Williams cites no case stating this rule, and we have found none. We are, of course, highly skeptical that Williams has any viable defenses to the forcible entry action. If she had, she could have raised them in August 1996 rather than filing her bankruptcy petition. Williams has done everything she could to make sure that the merits of her supposed defenses have not been tested, including not even mentioning them until oral argument before this court (and then only when questioned). But however skeptical we may be, we cannot say with certainty that her defenses will fail, and so we cannot say with certainty that CHA's terminating Williams' lease was proper. Nor, however, can we say that it was not proper. Without adjudicating the merits of Williams' belatedly asserted defenses—an issue that was not before the lower courts and is not before us—it is impossible to determine whether her lease ended or not. If Williams prevails on the merits in the forced entry proceeding, then she will have preserved her lease as having some value and she can then seek to confirm her plan. If on the other hand she does not win on the merits, then her lease was proper-

2. Williams argues that we should follow *dictum* in *Robinson* and adopt a bright line rule that no lease in Illinois is ended before the landlord gets a judgment of possession. *See Robinson,* 54 F.3d at 322. In the passage Williams relies upon, we questioned the varying reasoning of two lower court decisions, one of which concluded a lease terminated under Illinois law following the notice period, *Cunningham v. Lifelink Corp.,* 159 B.R. 230 (N.D.Ill.1993), and the other declared a lease terminated when the landlord filed its forcible entry action. *In re Maxwell,* 40 B.R. 231 (N.D.Ill.1984). We continue to question those decisions' reasoning to the extent they both used analysis contrary to the analysis we adopt today. But in *Robinson* we never had to address whether a lease in Illinois ends prior to the landlord getting a judgment of possession; that issue was not before us, and the passage on which Williams relies is not this court's resolution of that issue.

3. It may be that a tenant-debtor who fails to identify any potential defense that she has to the forcible entry action—or at least assert that she has one—has waived her argument that the lease was not properly ended. Because CHA does not assert that Williams waived her argument that she could defend the forcible entry action, we need not reach this issue. *See Lander Co. v. MMP Investments, Inc.,* 107 F.3d 476, 480 (7th Cir.1997) ("waiver arguments, unlike jurisdictional arguments, are waivable").

ly ended and it would have no value to assume in her plan.

▮▮▮▮▮ Thus we finally get back to the "real" issue in this appeal: whether the bankruptcy court abused its discretion by modifying the automatic stay to permit the forcible entry action to proceed so that the state court could determine the merits of Williams' defenses, and, more to the point, whether the lease had any value that could be assumed under her plan. There is no abuse of discretion here. Had the bankruptcy court not modified the stay so that the forcible entry case could go forward, likely it would then have to determine the merits to her right of possession. With no particular expertise under this narrow area of state law, this would not be a particularly efficient use of judicial resources. Tenants might be encouraged to file a bankruptcy petition not only to forestall an eviction, but also to seek a more favorable forum for what might otherwise be a foregone conclusion.[4] *See In re United States Brass Corp.*, 110 F.3d 1261, 1265 (7th Cir.1997) ("The use of the Bankruptcy Code to obtain a favorable forum should not be encouraged."). Williams filed her bankruptcy petition three days before the state court was to hear the merits of any defenses she had. And that was more than 18 months ago.[5] The state courts would have expertise in deciding these issues promptly, and that determination would be accepted by the federal courts. There would be no need for a federal court to determine the parameters of the defenses under state law. *See Wood v. Wood*, 219 Ill.Dec. 877, 672 N.E.2d at 390 (expanding retaliatory eviction defense).

Having considered all these factors, we are convinced that the bankruptcy court did not abuse its discretion in modifying the automatic stay. Indeed, in a case like this all roads lead to the state court: if a tenant has no viable defenses, it makes sense to permit the landlord to get its judgment of possession; if the tenant has viable defenses, then it makes sense to permit her to assert them in state court. The sooner those issues are resolved, the sooner the parties can move on: either the landlord will be able to get its writ of possession and evict the tenant or the tenant can try to assume the now-valuable lease as part of her plan. Because the bankruptcy court did not abuse its discretion, the contrary holding of the district court is REVERSED.

---

**4.** A landlord might nullify this forum shopping by moving the bankruptcy court to abstain under 28 U.S.C. § 1334(c)(2), which requires abstention if a state court action has been filed. But even where the landlord has not yet filed a state action, the bankruptcy court could abstain under § 1334(c)(1).

**5.** Where a landlord can show that the tenant's Chapter 13 has not been filed in good faith but as a means of delaying action by the creditors, the bankruptcy court can dismiss the petition. *See In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992) (debtor's bad faith is "cause" under 11 U.S.C. § 1307(c) warranting dismissal).