KENNETH E. MAYOL, Plaintiff-Appellant, *v.* THE WEINER COMPANIES, LTD., Defendant and Third-Party Plaintiff.—(PAUL SOMERS, Third-Party Defendant-Appellee.)

Fourth District   No. 16834

Opinion filed August 7, 1981.—Rehearing denied September 8, 1981.

Waaler, Evans & Gordon, of Champaign, for appellant.

Thomas, Mamer & Haughey, of Champaign, for appellee.

MR. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

This case primarily involves the interpretation of the parties' contract to purchase real estate. Essentially, both parties contend that based upon their interpretation the other breached the contract.

The evidence at the bench trial showed that Somers (hereinafter seller) desired to sell rental property located on South First Street in Champaign. Seller enlisted the aid of Steven Vance of the Weiner Companies, Ltd., to help him sell the property, which, at that time, had a tenant. Vance, acting as the seller's agent, showed the property to Mayol (hereinafter buyer), who subsequently informed Vance that he wanted to purchase the property. Consequently, the buyer and seller signed a contract to purchase real estate, which in relevant part, stated:

"Conditions of offer:

1. Possession to be delivered on or before November 1, 1979 subject to tenant's rights

*   *   *

4. Seller shall furnish merchantable abstract of title or owner's title insurance policy, in the amount of the purchase price, showing

merchantable title of record in seller's name, subject only to encumbrances assumed herein.

5. Seller shall convey title by warranty deed, subject only to encumbrances assumed herein.
* * *.

11. Subject to existing restrictive covenants, easements and zoning regulations, if any." (The underlined words indicate that they were typed onto the form contract.)

Pursuant to other terms of the contract to purchase, the buyer tendered $1,000, which was held in escrow by the Weiner Companies, Ltd.

After signing the contract, the buyer received a copy of the tenant's lease, and, for the first time, learned that the tenant had an option to purchase the property. As a result of this knowledge, the buyer refused to abide by the contract to purchase and sued the Weiner Companies, Ltd., for the $1,000 in escrow. The record shows that, in turn, the Weiner Companies, Ltd., sued the seller. Prior to trial, however, the Weiner Companies, Ltd., tendered $1,000 to the clerk of the circuit court and the case proceeded as if the Weiner Companies, Ltd., had interpleaded the buyer and the seller.

After the evidence was presented, the trial court concluded that the crucial phrase in the parties' contract—"possession to be delivered on or before November 1, 1979, subject to tenant's rights"—was ambiguous. Thus, to ascertain what the parties meant by this phrase the trial court determined that it would consider extrinsic evidence. Based on the evidence presented, the trial court found that the parties intended the phrase to mean that the buyer was taking the property subject to all the tenant's rights contained in the lease, including the tenant's option to purchase. Accordingly, the trial court entered judgment in favor of the seller, awarding the seller the $1,000 as liquidated damages for buyer's breach of contract.

On appeal, the buyer argues: (1) The trial court's interpretation of the contract is against the manifest weight of the evidence, and (2) the seller is not entitled to judgment because he has not furnished the buyer a "merchantable abstract of title or owner's title insurance policy, * * *, showing merchantable title of record in seller's name * * *" as required by the contract.

In *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283-84, 154 N.E.2d 683, 689, the Illinois Supreme Court stated:

"A contract, however, is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose. [Citation.] The intention of the

parties is not to be gathered from detatched portions of a contract or from any clause or provision standing by itself, but each part of the instrument should be viewed in the light of the other parts. [Citations.]

The primary object of the construction of a contract is to give effect to the intention of the parties, greater regard being given to such intent, when clearly revealed, than to any particular words used in expression thereof. [Citations.] In general, the intention of the parties is to be determined from the final agreement executed by them, rather than from preliminary negotiations and agreements, [citation] but previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses. [Citations.] Similarly, under well recognized exceptions to the parol evidence rule, extrinsic evidence is admissible to show the meaning of words used in a contract where there is an ambiguity, or when the language is susceptible of more than one meaning. [Citations.]"

Commenting further on the use of extrinsic evidence in cases involving contract interpretation, the Illinois Supreme Court in *Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 114, 251 N.E.2d 242, 247, stated:

"The so-called parol-evidence rule is, in fact, a rule of contract construction as well as an evidence rule. If the parties to an instrument intend that it alone is to constitute the agreement between them or if the instrument itself is complete and discloses no intention that extrinsic matters are a part of it, terms not included in the instrument may not be proved; and if its language is unequivocal, no evidence to show any other meaning or intention may be considered. [Citation.] It follows, however, that if the agreement is not complete or if the language of the instrument is ambiguous or uncertain, then in either event extrinsic evidence may be introduced to expand or interpret the document, as the case may be."

Whether an ambiguity exists in a contract is a question of law. (*Coney v. Rockford Life Insurance Co.* (1966), 67 Ill. App. 2d 395, 214 N.E.2d 1.) Here, the trial court determined that the phrase "subject to tenant's rights" was ambiguous. With this determination we agree. Thus, as the above quoted cases point out, the trial court properly considered extrinsic evidence in its determination of what the parties meant by the ambiguous phrase "subject to tenant's rights."

Accepting that the contract is ambiguous, both parties agree that the question of whether the trial court's interpretation of the ambiguous contract is correct is a question of fact. (See 12 Ill. L. & Prac. *Contracts*

§247 (1955).) The buyer contends that the trial court's interpretation is against the manifest weight of the evidence. We agree.

Even though the use of extrinsic evidence is proper in this case, the express wording of the contract to purchase also merits consideration. (See *Martindell.*) As previously stated, paragraph 1 of the contract states "possession to be delivered on or before November 1, 1979, subject to tenant's rights." Paragraph 11, on the other hand, specifically enumerates three encumbrances to which the title was subject; namely, easements, restrictive covenants and zoning regulations. If, as the trial court found, the parties had intended the phrase "subject to tenant's rights" to encompass the tenant's option to purchase the land the buyer was purchasing, then it is curious that the phrase "subject to tenant's rights" was not listed in paragraph 11 along with the other enumerated encumbrances on title.

An option to purchase is an atypical tenant's right. Thus, the placement of the words "subject to tenant's rights" immediately after the words "possession to be delivered on or before November 1, 1979" does not readily suggest to the buyer, or for that matter anyone else reading the contract, that he is purchasing land which is subject to an option to purchase. The more common interpretation of these words, we believe, is that the buyer is purchasing land subject to the tenant's right to remain in possession. Although the phrase "subject to tenant's rights" is subject to different interpretations, the contract construed as a whole does not favor the trial court's interpretation.

Similarly, the extrinsic evidence also does not support the trial court's interpretation. The evidence is undisputed that the buyer *did not know* that the tenant had an option to purchase when he signed the contract. The testimony at trial shows that Vance, the seller's agent, showed the property in question to the buyer. The buyer knew that a tenant was living there subject to a lease. In fact, the buyer asked questions and talked to Vance concerning the tenant and his lease. Vance, as well as the buyer, testified that the buyer did not know that the property was subject to the tenant's option to purchase. The ineluctable conclusion was that neither the seller, nor his agent, informed the buyer of the tenant's option to purchase even though the buyer had inquired about the lease. Also, the buyer's unrefuted testimony indicates that he requested a copy of the lease, which he did not receive until after he signed the contract. After the buyer went over the lease with his attorney, he refused to go through with the contract.

Clearly, the buyer did not intend the phrase "subject to tenant's rights" to encompass the tenant's option to purchase. Further, there is nothing in the record to indicate that the seller thought that the buyer would interpret "subject to tenant's rights" to mean subject to tenant's

option to purchase. This observation is underscored by the fact that the seller did not inform the buyer of the tenant's option to purchase even though the buyer inquired about the lease. Further, the fact that such a crucial encumbrance to the title was not disclosed to the buyer, or specifically enumerated in the contract, does not support the seller's position that the phrase "possession to be delivered on or before November 1, 1979, subject to tenant's rights" would be interpreted to mean that the buyer was purchasing land subject to an option to purchase held by the tenant.

In relevant part, Restatement (Second) of Contracts §21 (Tent. Drafts Nos. 1-7, 1973) reads:

"(2) The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if * * *

(b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party."

In essence, the position taken by the Restatement (Second) is that if the parties' intent does not coincide on a material term, then there is not a contract unless one of the parties is more guilty than the other for the difference in the meaning attached. Or, in other words, if there is a misunderstanding a contract results on the terms understood by the party who is less at fault for the misunderstanding. (J. Calamari & J. Perillo, Contracts §93 (1970).) For a similar pronouncement, see *Coney v. Rockford Life Insurance Co.*

We hold that the trial court's interpretation of the parties' contract was against the manifest weight of the evidence. The evidence showed that the buyer had no reason to know from the language used in the contract, or from the circumstances surrounding the contract's execution, that he was signing a contract to purchase land subject to an option to purchase; and the seller had no reason to believe that the buyer thought he was purchasing land subject to the tenant's option to purchase. For such reason we hold that the buyer is entitled to the return of the $1,000 payment deposited in escrow. Upon such determination it is unnecessary to examine the second issue argued by the buyer.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment not inconsistent with the views expressed.

Reversed and remanded with directions.

MILLS and LONDRIGAN, JJ., concur.