No. 3--96--0108

_________________________________________________________________

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

STEPHEN B. MANN and STANLEY   )  Appeal from the Circuit Court

MANN,                         )  of the 13th Judicial Circuit,

                              )  Grundy County, Illinois

     Plaintiffs-Appellees,    )

                              )

     v.                       )

                              )

JOHN BERRY MANN and MARY L.   )

MANN,                         )

                              )

     Defendants-Appellants.   )

                              )

______________________________)  No. 95--LM--35

                              )      95--LM--36

JOHN BERRY MANN and MARY L.   )

MANN,                         )

                              )

     Plaintiffs-Appellants,   )

                              )

     v.                       )

                              )

STEPHEN B. MANN and STANLEY   )

MANN,                         )  Honorable

                              )  Robert H. Adcock,

     Defendants-Appellees.    )  Judge Presiding.

_________________________________________________________________

JUSTICE MICHELA delivered the opinion of the court:

_________________________________________________________________

     Stephen B. Mann and his son Stanley Mann (plaintiffs) filed a

complaint in forcible entry and detainer (735 ILCS 5/9--101 et seq.

(West 1994)) against their brother and uncle, John Berry Mann and

his wife Mary L. Mann (defendants).  Defendants also filed a

complaint in forcible entry and detainer against the plaintiffs

(735 ILCS 5/9--101 et seq. (West 1994)).  Upon the agreement of the

parties the cases were consolidated for a bench trial.  Plaintiffs,

as lessees sought to enforce the terms of a written "Crop Share

Farm Lease" (lease) executed with John Mann, the father of

plaintiff Stephen and defendant John Berry, which allowed them to

farm land known as "parcel number five" (the realty) for a term of

15 years.  Defendants succeeded to the title of the realty upon the

death of John Mann and sought to terminate the lease upon the

ground that the leasehold was a tenancy at will; alternatively,

defendants contended the lease was terminable because the

plaintiffs were in breach of the terms of the lease.  The trial

court ruled the lease was a tenancy for years and enforceable

against both plaintiffs and defendants for the duration of the

leasehold.  The trial court further found plaintiffs were not in

breach of the lease; and, alternatively ruled that if a breach did

occur, it was immaterial and entered judgment in favor of

plaintiffs.  Defendants appeal the judgment and certain evidentiary

rulings rendered by the trial court.  We affirm.

     The lease was properly executed between John Mann and

plaintiffs on June 10, 1993, and properly recorded on June 11,

1993, at 2:56 p.m.  A term in the lease provided that the lessees

were to submit annual reports to the lessor on forms provided by

the lessor.  During a second transaction on or about June 10, 1993,

John Mann executed a quitclaim deed (deed two) conveying the realty

to the defendants, reserving a life estate in himself and expressly

providing that "[t]his conveyance is made subject to the terms of

the [lease]."  Deed two was also properly recorded on June 11,

1993, at 3:03 p.m.  John Mann died on November 15, 1993.  On

September 22, 1994, defendants notified plaintiffs of their intent

to terminate the lease and provided further notice of the

termination by letter on March 24, 1995, claiming plaintiffs were

in breach of the lease for their failure to provide the lessor with

an annual report concerning finances and recordkeeping.

     At trial, plaintiff Stephen testified he had farmed the realty

under an oral lease agreement with John Mann since 1980.  During

cross-examination, Stephen was asked why he and his father decided

to execute a written lease after farming the realty under an oral

lease for 13 years.  Plaintiffs' counsel objected on the basis of

relevancy and defendants argued the answer was relevant to

construing John Mann's intent in executing the lease and deed two. 

The trial court sustained the objection.

     During defendants' case-in-chief they unsuccessfully sought

admission of two legal documents, John Mann's will and a third

quitclaim deed (deed three) which was also executed by John Mann on

or about June 10, 1993, and recorded after 3:03 p.m. on June 11,

1993.  Defendants argued deed three was contemporaneous with both

the lease and deed two.  Defendants reasoned deed three would be

helpful in resolving any ambiguity caused by the lease and its

impact upon their possessory interest in the realty.  The trial

court ruled that this extrinsic evidence was inadmissible because

the lease and deed two were not ambiguous and John Mann's intent as

both grantor and lessor must be construed from the words of the

documents themselves.

     We first address defendants' argument that the trial court

committed reversible error in refusing to admit John Mann's will

and deed three into evidence.  We do not dispute defendants'

reliance on the long-standing principle that "deeds and contracts

executed contemporaneously, must be construed together." 

Clodfelter v. Van Fossan, 394 Ill. 29, 67 N.E.2d 182, 184 (1946). 

However, it is an equally long-standing principle that "the nature

and extent of the estate granted shall be determined, as a matter

of law, from the deed itself."  Rockford Trust Co. v. Moon, 370

Ill. 250, 18 N.E.2d 447, 448-49 (1938).  Further, the grantor's

intent is to be construed from the four corners of the deed.  See

generally Rockford Trust Co., 370 Ill. 250, 18 N.E.2d at 449.  If,

however, a deed is ambiguous, extrinsic or parol evidence may be

used.  Foster v. Foster, 273 Ill. App. 3d 106, 112, 652 N.E.2d 350,

354 (1995).

     Similarly, the intentions of the parties to a contract, such

as a lease, are to be determined from the document itself.  Mayol

v. Weiner Cos., Ltd. 98 Ill. App. 3d 985, 986-87, 425 N.E.2d 45, 47

(1981).  In the event of an ambiguity within the lease, extrinsic

evidence may be used.  Mayol, 98 Ill. App. 3d at 987, 425 N.E.2d at

47.  Evidentiary rulings are within the discretion of the trial

court and, absent an abuse of discretion resulting in prejudice to

the objecting party, the rulings will not be disturbed on appeal. 

Smith v. Black & Decker, Inc., 272 Ill. App. 3d 451, 650 N.E.2d

1108 (1995).

     The trial court did not abuse its discretion in refusing to

admit copies of John Mann's will and deed three.  The lease speaks

for itself.  There is no ambiguity in its terms that plaintiffs

Stephen and Stanley shall farm the realty for 15 years.  Likewise,

deed two is unambiguous.  Deed two conveys the realty to defendants

John Berry and Mary, reserving a life estate in the grantor, John

Mann.  This deed also makes the conveyance of the realty subject to

the terms of the lease.  These documents, when construed together

as contemporaneous written instruments, indicate John Mann wished

one son to farm the realty for 15 years while he wished for another

son to own the realty in fee.  These documents further indicate

that John Mann foresaw the contingency of his death during the

leasehold's term.  Thus, the provisions of deed two indicate John

Mann's intent upon the event of his death.

     Deed two unambiguously demonstrates that if John Mann died

during the life of the leasehold, he intended the remaindermen to

honor the terms of the leasehold agreement.  On their face, these

documents present no ambiguity.  Thus, the trial court did not

abuse its discretion in refusing to admit John Mann's will and deed

three.  Nor do we agree the trial court abused its discretion in

sustaining plaintiffs' objection to defendants' query to Stephen on

cross-examination as to why John Mann wanted to execute a written

lease.  This question's only purpose was to delve into the

grantor's intent which the trial court, in its sound discretion,

deemed irrelevant in the absence of any ambiguity within the lease

and deed two.  Smith, 272 Ill. App. 3d at 458, 650 N.E.2d at 1114-

15.

     Defendants next contend the trial court erred when it found

the realty remained subject to the leasehold agreement. 

Specifically, defendants argue that "a life tenant cannot make a

lease for a longer period than his own term unless joined by the

remainder-man, and his lessee, upon the death of the life tenant,

becomes a tenant by sufferance or at will."  Craig v. Launer, 346

Ill. App. 234, 104 N.E.2d 830, 832 (1952).  Defendants maintain

that as remaindermen they are bound to a non-freehold estate which

will last for a term longer than John Mann's life.  Defendants

further contend that since they were not a party to the lease at

its execution and because they have succeeded to title in the

realty, the leasehold has been transformed into a tenancy at will. 

Defendants therefore conclude the lease is terminable upon their

election.  Upon a close analysis of the  documents, the times they

were recorded and the resulting legal positions of the parties, we

disagree.

     Before the lease was executed and recorded, John Mann owned

the realty in fee.  John Mann then executed a lease with plaintiffs

permitting them to farm the realty from March 1, 1994, to February

28, 2009.  The lease was a term for years, which has as its

distinctive feature, "the right of the tenant to exclusive

possession of a defined physical area for the duration of the

specified term."  C. Moynihan, Introduction to the Law of Real

Property, 63 (1988); People v. May, 46 Ill. 2d 120, 124, 262 N.E.2d

908, 910 (1970).  Thus, the effect of the lease was to carve out a

term for years leaving John Mann, as lessor, with a reversion in

fee simple.

     Seven minutes later, John Mann transferred his reversion in

fee simple to the defendants, reserving a life estate in himself. 

Thus, John Mann kept a life estate in his reversionary interest in

fee simple to the realty, subject to the leasehold's term for 15

years.  Therefore, the defendants, as grantees, took a vested

remainder interest in fee simple subject to postponed enjoyment. 

"A remainder is vested if there is a person in being ascertained

and ready to take who has a present right of future enjoyment, one

which is not dependent upon any uncertain event or contingency." 

Dauer v. Butera, 267 Ill. App. 3d 539, 543, 642 N.E.2d 848, 850

(1994).  However, the defendants' remainder interest in possession,

although vested, does not mean they were seized, i.e., immediately

entitled to possession of the realty upon John Mann's death. 

Dalton v. Eash, 411 Ill. 296, 103 N.E.2d 483 (1952).  John Mann

used words of limitation when he executed deed two which expressly

provided that the conveyance of the realty was subject to the

duration of the leasehold.

     We conclude that although the defendants had a vested interest

in possession to the realty or, put another way, a present fixed

right of future enjoyment, (Northern Trust Co. v. Biddle, 65 Ill.

App. 2d 253, 212 N.E.2d 694 (1965)), their right to enjoy the

possession of the realty is postponed.  See generally  28 Am. Jur.

2d Estates § 256 (1966).  Accordingly, the result in the case at

bar is that upon John Mann's death, defendants, being vested, took

title in fee simple to the realty but their right to enjoy

possession of the realty is postponed for the duration of the

leasehold's term for 15 years.  Defendants cannot hasten their

enjoyment of their possessory interest to the realty by relying

upon the rule of law announced in Craig v. Launer.

     Craig v. Launer is factually distinguishable from the case at

bar.  There, the defendant tenant, Launer, farmed land pursuant to

an oral periodic tenancy lease agreement with the lessor.  Upon the

lessor's death, the land was devised to his wife for her life.  The

wife continued to accept rents from the tenant under the pre-

existing oral lease.  The wife died and the land was devised to the

plaintiff Craig for her life.  However, the defendant tenant,

Launer, continued farming the land after the wife's death pursuant

to the oral lease agreement.  The defendant tenant, Launer, refused

to surrender possession of the land and the plaintiff lessor,

Craig, brought an action in forcible entry and detainer.  The court

ruled in the plaintiff's favor.

     The court found that the lessor's wife, as a life tenant, had

continued the oral periodic tenancy agreement through her consent

to the tenant's use of the land and acceptance of rents.  The

wife's possessory interest in the land only existed for the

duration of her life.  Thus, the court ruled that when the wife

permitted the oral periodic tenancy, an estate of indefinite

duration to continue, she had improperly bound the remainderman to

the leasehold because it lasted for a term greater than her

possessory interest in the land.  The court then concluded that the

leasehold was terminable as a tenancy at will or a tenancy by

sufferance when it invoked the general rule that while a life

estate retains the quality of alienability enabling the life tenant

to convey his estate to a third person, the life tenant cannot

convey a greater estate than his own.  Launer, 346 Ill. App. 234,

104 N.E.2d at 832; see C. Moynihan, Introduction to the Law of Real

Property, 53 (1988).  

     Conversely, in the case at bar, John Mann executed a  written

lease for a term for years which was recorded before deed two,

establishing that, unlike Craig v. Launer, John Mann was not a life

tenant when he executed deed two and conveyed his reversionary

interest in fee simple to the realty.  Moreover, the plaintiffs,

unlike the lessees in Craig v. Launer, had an estate in land of

finite duration conferring them with the exclusive right of the use

and possession of the realty for 15 years.  8930 South Harlem Ltd.

v. Moore, 77 Ill. 2d 212, 220, 396 N.E.2d 1, 5 (1979). 

Accordingly, John Mann conveyed his reversionary interest in fee

simple with words of limitation, postponing defendants right to

enjoy possession of the realty for the duration of the leasehold. 

Because these differences are significant, we decline to apply the

rule announced in Craig v. Launer.

     Finally, neither party has directed our attention to any

precedent, nor could we locate any such precedent, standing for the

proposition that a grantor cannot convey his reversionary interest

in fee simple subject to postponed enjoyment for the duration of a

pre-existing leasehold's term for years.  Therefore, we hold the

trial court did not err in finding that the tenancy for years did

not terminate upon the death of the lessor.  We also hold the trial

court correctly ruled that defendants' possessory interest in the

realty was postponed for the duration of the pre-existing leasehold

agreement for a term of 15 years.  See Restatement (Second) of

Property, Landlord & Tenant § 15.1, illustration 12, at 90 (1977).

     Next, we address defendants' argument that the trial court

erred in holding that the lease agreement was not breached or,

alternatively, was not materially breached by the plaintiffs'

failure to tender an annual financial report to the lessor as

required by the terms of the lease.  Plaintiff Stephen testified at

trial that he understood that the lease required him to provide an

annual report to the lessor by December 31, for each year

comprising the 15 year term of the leasehold.  Stephen testified he

provided his father John Mann, as lessor, with such a final

accounting in 1993.  Stephen further testified that he kept records

and receipts of crop production for 1995.  However, defendants

never requested plaintiffs to submit an annual report, nor did

defendants provide annual report forms to plaintiffs.

     We agree with the trial court that the lease was not

materially breached.  The record irrefutably demonstrates that

plaintiff Stephen kept records and receipts of crop production for

the 1995 year.  Additionally, Stephen apportioned the lessor's

share of the crops to defendant John Berry.  John Berry received

this payment and the remainder of his share was placed in storage. 

In effect, Stephen performed his contractual obligation by

maintaining financial records and farming the realty so that the

payment terms of the lease were honored.  Therefore, we cannot say

that the trial court erred when it found that if a breach occurred

when Stephen did not tender an annual report, it was immaterial.  

 

     For the foregoing reasons, the judgment of the circuit court

of Grundy County is affirmed.

     Affirmed.

     MC CUSKEY, J. and LYTTON, J., concur.