No. 2--01--1165

      

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

LUIS DIAZ, VIRGINIA DIAZ, and ) Appeal from the Circuit

MANUEL DIAZ, ) Court of Kane County.

) 

Plaintiffs-Appellees,
 )

)

v. 
 ) No.
 99--CH--946

)

HOME FEDERAL SAVINGS AND LOAN ) 

ASSOCIATION OF ELGIN,
 ) 

) 

Defendant-Appellant
 ) 

) Honorable

(Union Pacific Railroad Co. and ) Patrick J. Dixon,

Unknown Owners, Defendants). ) Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

The circuit court of Kane County entered summary judgment quieting title in a parcel of real estate in favor of plaintiffs, 
Luis Diaz, Virginia Diaz, and Manuel Diaz
.  Defendant Home Federal Savings and Loan Association of Elgin (the bank) now appeals.  The bank maintains that plaintiffs failed to show that they possessed an interest in the property in question, that the bank in fact held title to the parcel, and that plaintiffs' claim was barred by several statutes of limitations.  For the reasons that follow, we affirm.

I. BACKGROUND

The instant case arises out of a dispute as to the ownership of a parcel of land formerly used as a right-of-way by the Union Pacific Railroad Company (the railroad).  Plaintiffs own a parcel of property adjacent to the right-of-way and operate a restaurant there.  The bank is located adjacent to the right-of-way.

Plaintiffs claim title to the property by virtue of their purchase of the land upon which their restaurant is situated.  Plaintiffs purchased the property in 1994 from the Fishburn family.  The description of the land contained in the deed stated "[t]he north 1/2 of lot 3, lying east of the Chicago and Northwestern Railroad Company right-of-way."  In 1999, the Fishburns executed a quitclaim deed that specifically included "the land subject to the Right of Way granted to the Galena Union Railroad Company." Plaintiffs contend that their purchase from the Fishburns included an interest in the right-of-way.  They trace title, through a series of mesne conveyances, to a grant made by Erastus Tefft to one of their predecessors in interest in 1850.  Plaintiffs currently use the property for ingress and egress, employee parking, and the placement of a Dumpster.

The bank claims title by virtue of a purchase of the right-of-way from the railroad.  In March 1999, the bank entered into a contract with the railroad to purchase the right-of-way.  The railroad provided the bank with a quitclaim deed.  In 1849, Tefft granted the right-of-way to the railroad's predecessor.  Thus, the bank traces title back to Tefft as well.  Since 1988, the bank had been using the right-of-way for ingress and egress pursuant to a licensing agreement with the railroad.

On December 15, 1999, plaintiffs filed a complaint seeking, 
inter alia
, a declaration that they were the owners of the right-of-way.  The bank moved to dismiss pursuant to section 2--619 of the Civil Practice Law, interposing several affirmative defenses (735 ILCS 5/2--619 (West 2000)), and plaintiffs moved for summary judgment.  The trial court granted partial summary judgment, finding that the deed from Tefft to the railroad's predecessor did not convey a fee interest and that the railroad's grant to the bank conveyed nothing.  The court then held an evidentiary hearing, the purpose of which was to determine the boundaries of plaintiffs' property.  Following this hearing, the court determined that plaintiffs owned the right-of-way.  This appeal followed.

II. ANALYSIS

Because this case comes to us following a grant of summary judgment, we conduct 
de novo
 review.  
Corona v. Malm
, 315 Ill. App. 3d 692, 694 (2000).  Summary judgment is appropriate where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law.  
Stewart v. Jones
, 318 Ill. App. 3d 552, 557-58 (2001).  The record must be construed strictly against the movant.  
Largosa v. Ford Motor Co.
, 303 Ill. App. 3d 751, 753 (1999).  The nonmovant need not prove its case; however, it must set forth some facts that would arguably entitle it to prevail.  
Lutz v. Goodlife Entertainment, Inc.
, 208 Ill. App. 3d 565, 568 (1990).  Further, in resolving this appeal, we must construe a series of deeds.  The construction of a deed normally presents a question of law and is also subject to 
de novo
 review.  
Timothy Christian Schools v. Village of Western Springs
, 285 Ill. App. 3d 949, 954 (1996).  However, where an ambiguity exists and extrinsic evidence is required to ascertain the intent of the parties, a question of fact exists, and we will disturb the decision of the fact finder only if it is contrary to the manifest weight of the evidence.  
Mayol v. Weiner Companies, Ltd.
, 98 Ill. App. 3d 985, 987-88 (1981).  With these standards in mind, we now turn to the merits of the bank's arguments.

Before turning to the merits, however, we note that, at several points in its brief, the bank attacks the sufficiency of plaintiffs' complaint.  The bank filed a motion in the trial court titled "motion to strike or to make more definite and certain" attacking the sufficiency of the complaint.  In this motion,  the bank relied on section 2--615 of the of the Civil Practice Law.  735 ILCS 5/2--615 (West 2000).  The bank subsequently answered the complaint.  When a trial court denies a motion to dismiss a complaint and a defendant files an answer, the defendant generally waives any objection to defects in the complaint.  
People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van
, 177 Ill. 2d 314, 333 (1997).  Thus, by answering plaintiffs' complaint,  the bank waived any objections regarding the sufficiency of the complaint, and we will not consider this issue.

We also note that the bank complains that the trial court entered summary judgment regarding its nonownership of the parcel prior to determining plaintiffs' interest in the parcel.  We see neither prejudice nor error in the trial court's decision to proceed in this manner.  The trial court merely simplified and defined the issues likely to arise at the evidentiary hearing.  Had  the bank successfully controverted plaintiffs' claim of title at the hearing, it is apparent that plaintiffs would not have prevailed in the cause.

A. Title

 The bank first contends that the trial court erred in granting summary judgment in plaintiffs' favor for three reasons.  First, the bank argues that plaintiffs have not shown that they hold title to the parcel.  Second, in a related argument, the bank  contends that plaintiffs have not demonstrated that they hold title superior to the bank's.  Third, the bank takes issue with the trial court's determination that the railroad abandoned the right-of-way.  In order to resolve this appeal, we must address three main issues: (1) what interest, if any, plaintiffs hold to the parcel, (2) what interest, if any, the bank holds, and (3) whether any question of material fact exists as to whether the railroad abandoned the right-of-way.

In an action to quiet title, a plaintiff must prevail on the strength of its own title, rather than merely on defects in a defendant's title.  
Lakeview Trust & Savings Bank v. Estrada
, 134 Ill. App. 3d 792, 812 (1985).  However, a plaintiff need not establish perfect title to the property.  
Reynolds v. Burns
, 20 Ill. 2d 167, 193 (1960).  Where a plaintiff demonstrates less than perfect title, the title held by the defendant may be considered, and the plaintiff may still prevail if able to demonstrate superior title.  
Wilder v. Finnegan
, 267 Ill. App. 3d 422, 425 (1994).  A plaintiff is barred from maintaining a quiet title action only where it can show no title whatsoever in the property at issue.  
Marlow v. Malone
, 315 Ill. App. 3d 807, 812 (2000).

The trial court correctly determined that plaintiffs demonstrated title in the parcel sufficient for them to prevail on their motion for summary judgment.  The trial court held an evidentiary hearing and considered extrinsic evidence on this point; thus, we will apply the manifest weight standard to the trial court's construction of the deed.  
Mayol
, 98 Ill. App. 3d at 987-88.  Whether an ambiguity exists, however, remains a question of law.  
Foxfield Realty, Inc. v. Kubala
, 287 Ill. App. 3d 519, 523 (1997).  Our interpretation comports with that of the trial court; thus, we would affirm even on a less deferential standard of review.

Plaintiffs trace title to the property through a series of mesne conveyances to Erastus Tefft.  Tefft was also the grantor  who conveyed the right-of-way to the railroad's predecessor in interest.  Thus, we must construe the deed given by Tefft to the plaintiffs' predecessor in interest.

In construing a deed, our primary goal is to ascertain the intent of the parties.  
Lakeland Property Owners Ass'n v. Larson
, 121 Ill. App. 3d 805, 809 (1984).  To determine the parties' intent, a court must analyze "the specific words used in conjunction with the circumstances under which they were drafted."  
Warren-Boynton State Bank v. Wallbaum
, 123 Ill. 2d 429, 436 (1988).  Relevant circumstances include " 'the state of [the testator's] property, his family, and the like.' "  
Warren-Boynton State Bank
, 123 Ill. 2d at 436, quoting 
Armstrong v. Barber
, 239 Ill. 389, 404 (1909).  The document must be considered as a whole.  
Warren-Boynton State Bank
, 123 Ill. 2d at 436.  Further, "[n]o one clause, phrase or sentence determines the intent" of the parties, and "[n]one of the words are [to be] considered meaningless or repugnant or surplusage."  
Warren-Boynton State Bank
, 123 Ill. 2d at 436.  Where the parties' intention is not clear, a court must turn to rules of construction to aid the inquiry.  
Warren-Boynton State Bank
, 123 Ill. 2d at 436.  Consistent with the principle that the relevant circumstances under which a grant was made must be considered (
Warren-Boynton State Bank
, 123 Ill. 2d at 436), we apply the principle of contractual interpretation that parole evidence is admissible to determine if a latent ambiguity exists (see 
American National Bank & Trust Co. of Chicago v. Olympic Savings & Loan Ass'n
, 60 Ill. App. 3d 722, 724-25 (1978) (construing a lease)).

The bank argues that the deeds in the chain of title linking plaintiffs to Tefft specifically exclude the right-of-way from the conveyances.  For example, the deed from Tefft to his successor in interest describes the property conveyed as "[a]ll of that certain part [of the lot] which lays east of the line of the Chicago & Galena Rail Road."  Subsequent deeds contain similar descriptions.  The bank contends that the "lays east of" language demonstrates that this conveyance specifically excludes any interest in the land used by the railroad.  We disagree.  As we will explain below, the railroad right-of-way constituted an easement.  Thus, the question before us is whether Tefft and the subsequent grantors intended that the fee interest underlying the easement pass with the balance of the property or if they intended to retain an interest in the property themselves.

Regarding this point, the deed is ambiguous.  The original deed includes in the description the following:

"Together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions remainder and remainders rents issues and profits thereof and 
all the estate right title interest claim or demand whatsoever
 of the said party of the first part either in Law or Equity of in and to the above bargained premises with the hereditament and appurtenances."  (Emphasis added.)

Considering this passage, particularly the emphasized language, in the context of the facts surrounding the conveyance, it is ambiguous as to whether Tefft intended to include his interest in the land underlying the railroad's right-of-way in the grant.

If Tefft had intended to retain a fee interest in the land underlying the right-of-way, he would have been left with a piece of property that was being used exclusively by the railroad.  Given the operation of the railroad, no other use could be made of the parcel.  Further, it is also unlikely that he would have retained a fee interest in the land in contemplation of the railroad eventually abandoning the easement.  The land underlying the easement is an irregularly shaped parcel with dimensions of 10.85 feet by 66 feet by 45 feet by 74.7 feet.  As such, it would have had little, if any, value to Tefft as an independent parcel.  Thus, we conclude that, in light of the facts surrounding the conveyance, Tefft intended to include his interest in the land underlying the easement in the conveyance to plaintiffs' predecessors.

The bank counters, "Illinois case law holds that this language is merely surplusage and does not convey any interest in land at all."  The bank's position suffers from two fatal flaws.  First, it ignores the similarly well-established principle that courts should avoid construing a deed so that any portion of it is rendered meaningless.  
Warren-Boynton State Bank
, 123 Ill. 2d at 436; 
Dolley v. Powers
, 404 Ill. 510, 512-13 (1949).  Second, and more fundamentally, the bank misconceives the enterprise upon which we are embarked.  Our usual goal in interpreting a deed is to ascertain the intent of the parties (
Lakeland Property Owners Ass'n
, 121 Ill. App. 3d at 809), not defeat it.  Documents like deeds, wills, and contracts are 
sui generis
, and they must be interpreted on their own terms.  Thus, whether our supreme court interpreted language in a deed making reference to tenements, hereditaments, and appurtenances to not encompass a grantor's fee interest in an adjacent parcel in, for example, 
St. Louis Bridge Co. v. Curtis
, 103 Ill. 410 (1882), is largely irrelevant.  Whatever the supreme court concluded about the deed that was before it in 
St. Louis Bridge Co.
 says little about the deed we are called on to interpret, particularly given that each such transaction occurs in a different factual context.  Blindly applying interpretations from other cases to construe deeds and like instruments may just as well defeat the intentions of the parties as advance them.

We observe that the bank does not attempt to establish a custom or usage that such terms did not encompass interests like that held by Tefft in the right-of-way.  If the parties had contracted with such a usage in mind, the usage would be relevant to interpreting the deed.  See 
Katz v. Brooks
, 65 Ill. App. 2d 155, 159-60 (1965).  The bank presents no evidence of such a usage, the existence of which is a question of fact.  
Clark v. General Foods Corp.
, 81 Ill. App. 3d 74, 79 (1980).  Further, it would have been impossible for Tefft and his grantee to have had in mind the meaning set forth in the cases the bank relies on in support of this argument, as the earliest one was decided approximately 30 years after the conveyance occurred.

Thus, we conclude that plaintiffs, by virtue of the chain of title leading back to Tefft, have demonstrated that they hold title to the right-of-way.  As noted above, it is not necessary for plaintiffs to establish perfect title to the parcel.  
Reynolds v. Burns
, 20 Ill. 2d at 193.  However, where less than perfect title is established, the title held by the defendant, if any, may be considered, and the plaintiff may still prevail if able to establish superior title.  
Wilder v. Finnegan
, 267 Ill. App. 3d 422, 425 (1994).  Hence, assuming without deciding that the title exhibited by plaintiffs is less than perfect, we will examine the interest the bank holds in the parcel.

We must begin this inquiry with another grant made by Tefft, this time to the railroad's predecessor in interest.  The deed in question here provides:

"To all whom these presents shall come greeting: whereas the 'Galena and Chicago Union Railroad Company' contemplate constructing a railroad from Chicago to Galena now know ye that I, Erastus Tefft *** being desirous for the construction of the said railroad in consideration of the premises and of one dollar to me in hand *** have and by these presents to give, remise, relief, convey, and quitclaim to the Galena and Chicago Union Railroad Company for the purpose of constructing a railroad thereon and for all uses and purposes connected with the construction and use of said railroad the right of way for the said railroad over and through the following described tract, piece or parcel of land situate lying and being in the County Kane and State of Illinois bounded as follows to viz:

One rod in width on each side of the centre line of the Galena and Chicago Union Railroad as located through the northwest corner of lot No.4, and a part of the north half of lot No. 3 in block 16 of the original town plat of the town of Elgin ***.  To have, hold, and enjoy the land above described with the appurtenances unto the said Galena and Chicago Union Railroad Company and their assigns forever for any and all uses and purposes in any was connected with the construction, preservation, occupation, and enjoyment of said railroad.  Provided however that if the said railroad shall not be constructed over and through said premises within two years or if the said Galena and Chicago Union Railroad Company or their assigns shall at any time hereafter cease permanently to use said railroad to be constructed and the same shall be abandoned or the route thereof changed so as not to be continued over said premises then and in that case the said land hereby granted shall revert to the said grantor his heirs or assigns."

The bank contends that the deed created a fee simple determinable, leaving only a possibility of reverter in Tefft.  We disagree with  the bank and agree with the trial court.  Read as a whole, the deed makes apparent that the interest created in the Galena and Chicago Union Railroad Company was an easement.  

A fundamental principle of construction is that a deed should not be interpreted, to the extent possible, so that any portion is rendered meaningless or mere surplusage.  
Warren-Boynton State Bank
, 123 Ill. 2d at 436.  Construing this deed as creating a fee simple determinable violates this principle.  It renders the terms "over and through" and "right-of-way" meaningless.  An interest that passes "over and through" necessarily passes over and through something.  If a fee had been created in the grantee, the right-of-way would, in fact, pass through nothing; it would simply be property held by the grantee.  Further, the term "right-of-way" is synonymous with "easement."  See 
Schnabel v. County of Du Page
, 101 Ill. App. 3d 553, 558 (1981); see also 
Penn Central Corp. v. Commonwealth Edison Co.
, 159 Ill. App. 3d 419, 423 (1987).  That the parties used these two phrases in the deed provides strong evidence that they intended to create an easement.

Conversely, construing the interest created as an easement leads to no similar problems.  It is true that the last sentence of the above-quoted passage appears to create a possibility of reverter in the grantor.  While possibilities of reverter often follow a fee interest (
e.g.
, 
Mahrenholz v. County Board of School Trustees of Lawrence County
, 93 Ill. App. 3d 366, 371 (1981)), they may follow other interests as well (see 
In re Estate of Bentley
, 14 Ill. App. 3d 630, 633 (1973) (observing that "future interests in personal property have been recognized in Illinois")).
  Easements may be held subject to future interests such as possibilities of reverter and rights of reentry (
Abrams v. Royse
, 211 Ill. App. 3d 283, 286 (1991); 
City of Urbana v. Solo Cup Co.
, 66 Ill. App. 3d 45, 46 (1978)); hence, ascribing the intent to create such an interest runs afoul of no rule of law.

Furthermore, we do not find the language "[t]o have, hold, and enjoy the land *** forever" inconsistent with the intent to create an easement.  While such language, standing alone, appears to create a fee, considering the passage as a whole, we conclude that this language is limited by the term "right of way."  In the first paragraph quoted above, the grantor purported to "give, remise, relief, convey, and quitclaim *** the right of way *** over and through the following described tract, piece or parcel of land."  In 
Urbaitis v. Commonwealth Edison
, 143 Ill. 2d 458, 468-69 (1991), our supreme court rejected an argument that the term "right-of-way" limited the estate granted because it found that the parties had used the term merely as a shorthand description of the land itself.  Here, conversely, the inclusion of the term in the same sentence with words of conveyance indicates an intent by the parties to limit the estate.  Thus, read in context, what the grantee acquired to "have, hold, and enjoy" was an easement.

Thus, we conclude that the railroad held an easement in the parcel.  We further conclude that the railroad abandoned that easement.  The abandonment of a railroad right-of-way for railroad purposes results in the termination of the easement.  
Schnabel v. County of Du Page
, 101 Ill. App. 3d 553, 558 (1981).  The question of abandonment turns on the intent of the holder of the easement.  
Department of Conservation ex rel. People v. Fairless
, 273 Ill. App. 3d 705, 716 (1995).  Mere nonuse, unless accompanied by the intent to abandon, is insufficient in itself to establish abandonment.  
Seymour v. Harris Trust & Savings Bank of Chicago
, 264 Ill. App. 3d 583, 596-97 (1994).  However, nonuse is a relevant consideration.  
Egidi v. Town of Libertyville
, 251 Ill. App. 3d 225, 232-33 (1993).  An easement is abandoned "when nonuse is accompanied by acts which manifest an intention to abandon and which destroy either the object for which the easement was established or the means of its enjoyment."  
Schnabel
, 101 Ill. App. 3d at 558.

In the instant case, three undisputed facts conclusively demonstrate that the railroad intended to abandon the easement.  First, the railroad ceased operating trains on the easement late in 1997 or early in 1998.  Second, the railroad removed the tracks from the easement sometime in the middle of 1998.  Third, the railroad attempted to convey a portion of the easement to the bank.  The bank relies on 
Fairless
, 273 Ill. App. 3d at 715-17, in arguing that these facts are insufficient to conclusively show abandonment.  In 
Fairless
, however, the railroad owned the right-of-way in question in fee simple.  
Fairless
, 273 Ill. App. 3d at 716.  In the present case, the railroad held only an easement; hence 
Schnabel
, 101 Ill. App. 3d 553, provides sounder guidance.  
In 
Schnabel
, the court relied on, 
inter alia
, the three facts present in this case in determining that a railroad abandoned an easement as a matter of law.  
Schnabel
, 101 Ill. App. 3d at 561.  While 
Schnabel
 did rely on some additional facts, we find the facts present here sufficient to warrant summary judgment.  Particularly, that the railroad attempted to alienate the easement is compelling evidence that it no longer intended to use it for railroad purposes.  Because the railroad abandoned the easement and this was the only interest the railroad held, the bank took nothing by virtue of the quitclaim deed from the railroad

Accordingly, we hold that plaintiffs established title in the parcel.  The undisputed facts also show that the bank has no interest in the parcel.  Thus, the trial court committed no error in determining that plaintiffs owned the property.

B. Statutes of Limitations

The bank contends that plaintiffs' claim is barred by three statutes of limitations.  First, the bank contends that section 13--114 of the Code of Civil Procedure (Code) (735 ILCS 5/13--114 (West 2000)), which precludes reliance on documents predating a claim by 75 years under certain circumstances, bars plaintiffs from relying on the Tefft deed to plaintiffs' predecessors in interest.  Second, the bank contends the claim is barred by section 13--118 of the Code (735 ILCS 5/13--118 (West 2000)), which imposes a 40-year limitations period where a party and its predecessors can trace good title back for 40 years.  Finally, the bank asserts that any possibility of reverter created by the Tefft deed to plaintiffs' predecessor was extinguished by section 4 of the Rights of Entry or Re-entry Act (765 ILCS 330/4 (West 2000)).  We hold that none of these statutes bar plaintiffs' claim.

The plain language of section 13--114 conclusively forecloses  the bank's argument.  The section states that, among other things, no documents and instruments that were "executed, dated, delivered, recorded or entered into" more than 75 years before being offered in support of a claim "shall adversely to the party or parties hereafter coming into possession of such real estate under claim or color of title *** be evidence or admissible in evidence or be held or urged to make any title unmarketable in part or in whole, or be required or allowed to be alleged or proved as a basis for any action, or any statutory proceeding affecting directly or indirectly the title to such real estate."  735 ILCS 5/13--114 (West 2000).  Our primary goal in interpreting a statute is to ascertain the intent of the legislature.  
Vrombaut v. Norcross Safety Products, L.L.C.
, 298 Ill. App. 3d 560, 562 (1998).  The best indicator of the legislature's intent is, of course, the plain language of the statute.  
People v. Bowden
, 313 Ill. App. 3d 666, 668 (2000).

Section 13-114 protects individuals who "hereafter [come] into possession of such real estate under claim or color of title."  Thus, to invoke this section, a litigant must satisfy two conditions precedent: (1) it must be in possession of the property, and (2) the possession must be under claim or color of title.  Our review of the record indicates that it is undisputed that the bank is not in possession of the property at issue.  The concept of possession has plagued courts for years and prompted our supreme court to make the following observation:

" 'It has frequently been said in reference to acts necessary to constitute possession, that every case must rest upon its own facts, and that it is difficult to state any general rule as to what character of improvements or acts will be sufficient for this purpose, and that the acts necessary to constitute possession depend, to some extent, upon the nature and locality of the property, the use to which it may be applied and the situation of the parties; that a variety of circumstances necessarily have to be taken into consideration in determining the question.  Any acts of dominion exercised over the property by the party claiming to hold title thereto that clearly indicate to others an appropriation thereof to the purposes for which it may ordinarily be used are generally regarded as sufficient. [Citations.]' "  
Klingel v. Kehrer
, 81 Ill. App. 3d 431, 437 (1980), quoting 
LeSourd v. Edwards
, 236 Ill. 169, 172-73 (1908). 

Thus, possession is a fact-specific inquiry that must be undertaken in the context of the particular case.  The undisputed facts in this case show that, if anyone, plaintiffs are in possession of the parcel.

By affidavit, Luis Diaz averred that since his purchase of the restaurant he and his family have continually used the parcel for ingress, egress, and parking and have maintained a commercial garbage receptacle on it.  In a counteraffidavit, Kenneth Moran, one of the bank's employees, stated that the bank has not taken any action to interfere with plaintiffs' use of the parcel.  The only reasonable inference to be drawn from these facts, no matter how one defines "possession," is that the bank is not in possession of the parcel.  Accordingly, the bank is not entitled to invoke section 13--144 of the Code as a bar to the current action.

Section 13--118 is similarly inapplicable to the case at bar.  This section states, in pertinent part, that "[n]o action based upon any claim arising or existing more than 40 years before the commencement of such action shall be maintained in any court."  735 ILCS 5/13--118 (West 2000).  The claim plaintiffs advance did not arise more than 40 years prior to the date upon which they brought it.  It is undisputed that, until at least late in 1997, the railroad continued to use the easement.  Because the railroad was entitled to use the easement, plaintiffs could have brought an action against no one while the railroad was doing what it was clearly entitled to do.  Thus, section 13--118 does not preclude the assertion of the claim.

The bank also contends that section 4 of the Rights of Entry or Re-entry Act bars the plaintiffs' claim (765 ILCS 330/4 (West 2000)).  This section provides that "[n]either possibilities of reverter nor rights of entry or re-entry for breach of condition subsequent *** shall be valid for a longer period than 40 years from the date of the creation of the condition or possibility of reverter."  765 ILCS 330/4 (West 2000).  The bank contends that this provision renders ineffective the language in the deed creating the right-of-way that states that the parcel shall revert to the grantor in the event the parcel ceases to be used for railroad purposes.  As we have previously determined, however, the interest held by the railroad was an easement, which may terminate on its own terms when abandoned (see 
Schnabel
, 101 Ill. App. 3d at 558).  Therefore, the existence or nonexistence of such a future interest is irrelevant, and the bank's assertion that this statute bars the current action is ill founded.

III. CONCLUSION

In light of the foregoing, the judgment of the circuit court of Kane County is affirmed.

O'MALLEY and 
BYRNE
, JJ., concur.