# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Hoch v. Boehme*, 2013 IL App (2d) 120664

---

| | |
|---|---|
| Appellate Court Caption | JOE HOCH, a/k/a Joseph E. Hoch, and LINDA HOCH, a/k/a Linda R. Hoch, Plaintiffs and Counterdefendants-Appellees, v. LILLIAN C. BOEHME; ROY E. SCHMIDT, Individually and as Trustee under Trust Agreement Dated July 24, 1998, a/k/a The Roy E. Schmidt Revocable Trust; LINDA SCHMIDT, Individually and as Trustee under Trust Agreement dated July 24, 1998, a/k/a The Linda J. Schmidt Revocable Trust; and UNKNOWN OTHERS, Defendants and Counterplaintiffs-Appellants. |
| District & No. | Second District<br>Docket No. 2-12-0664 |
| Filed | May 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dispute seeking to quiet title to a parcel between the parties' properties, the judgment for plaintiffs was reversed and the cause was remanded with directions to enter judgment for defendants on their counterclaim, since plaintiffs failed to establish a claim to the parcel pursuant to section 13-110 of the Limitations Act based on their payment of the taxes on the "vacant and unoccupied land," and they did not receive an interest in the parcel through the chain of title, while defendants showed a superior right to title arising from the evidence that they had enclosed the parcel with a fence and supported their claim that it was not "vacant and unoccupied." |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 05-CH-960; the Hon. Michael T. Caldwell, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| Counsel on Appeal | Thomas W. Gooch III, of Gauthier & Gooch, of Wauconda, for appellants. |
| | |
| | James A. Campion and Lori E. Fulton, both of Campion, Curran, Lamb & Cunabaugh, P.C., of Crystal Lake, for appellees. |
| | |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1  Plaintiffs, Joe and Linda Hoch, filed a complaint against defendants, Roy and Linda Schmidt *et al.*, seeking to quiet title to a parcel of land in McHenry County. The Schmidts counterclaimed for a decree quieting title in their favor. Following a bench trial, the court quieted title in favor of the Hochs. The Schmidts appeal. For the reasons that follow, we reverse the judgment for the Hochs and remand for the trial court to enter judgment for the Schmidts on their counterclaim.

¶ 2                                    BACKGROUND

¶ 3  The appendix to this disposition is an enlargement of part of defendants' exhibit No. 1 at trial, which is a plat of survey of property immediately south of Collinwood Subdivision. We refer to it in its totality as the "Boehme property," after Lillian Boehme, who once owned the entire tract pictured south of Collinwood Subdivision. To the east of the Boehme property is Wayside Drive, running north and south. There are several deeds in the record. In the earliest deeds that purport to convey the Boehme property, the land immediately north of the Boehme property is described as the "tract of land conveyed by C. Ben Jacoby and wife to Anna Dianis by Warranty Deed dated February 21, 1922, and recorded in Book 164 of Deeds, Page 307, McHenry County, Illinois." The eastern boundary of the Jacoby property was 20 feet west of the eastern boundary of the Boehme property. In those older deeds, the Boehme property is reckoned from a point 20 feet east of the Jacoby property. The Jacoby property is now part of Collinwood Subdivision, which extends 20 feet east of the former Jacoby property. Consequently, the later deeds reckon the (now subdivided) Boehme property simply from the southeast corner of Collinwood Subdivision.

¶ 4  We have added numbers to the individual parcels. There are nine in all. The earliest deeds in the record identify a single division within the Boehme property. Specifically, these deeds convey the entire Boehme property but for "the East 20 feet and the North 20 feet" of

the property. These east and north 20-foot strips were later divided into parcels 4 through 9. Parcel 4, the disputed parcel here, is shaded on defendants' exhibit No. 1. Defendants' exhibit No. 1 represents the parcel as being 477.84 feet along, extending from the southeast corner of the former Jacoby property, but the deeds in the record describe the tract as being 497.84 feet along–that is, as extending from the southeast corner of Collinwood Subdivision. The discrepancy is not material for our purposes.

¶ 5    There is no dispute in this action that parcels 2, 5, and 7 are owned by the Hochs, and that parcels 1, 3, 6, 8, and 9 are owned by the Schmidts.[1] The Hochs and the Schmidts are in conflict over parcel 4 alone. It is undisputed that, since the 1980s, the Schmidts have maintained a fence around parcel 4.[2] (Judged by photographs in the record, the fence appears to be composed of steel-link sections and wood posts.) Both couples trace their claims of ownership of parcel 4 ultimately to Lillian Boehme, who died in 1974. The Hochs claim they received parcels 2, 4, 5, and 7 through a trustee's deed dated August 6, 2003, pursuant to a purchase agreement between the Hochs and Charles and Lee Ann Black, who had placed the property in trust in 1995. The Schmidts claim ownership of parcel 4 through quitclaim deeds and assignments of interest from the surviving heirs of Lillian Boehme.

¶ 6    In December 2005, the Hochs filed suit to quiet title to parcel 4. First, they cited the August 2003 trustee's deed as conveying them the parcel. Second, they claimed ownership under section 13-110 of the Limitations Act (Act) (735 ILCS 5/13-110 (West 2010)), which provides that a person will be adjudged the owner of "vacant and unoccupied land" where the person has a good-faith claim to title and has paid the legally imposed taxes on the property for seven successive years.

¶ 7    The Schmidts filed a motion to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2010)), arguing that the Hochs could not claim ownership under section 13-110 because parcel 4 was not "vacant and unoccupied," as the Schmidts had maintained a fence around it since the late 1980s. In response, the Hochs argued that the Schmidts' motion addressed only one ground for the Hochs' assertion of ownership, namely, section 13-110, while the Hochs were alternatively claiming title by virtue of a deed. Regarding the Schmidts' mention of the fence around parcel 4, the Hochs submitted that the Schmidts'

> "claim with respect to the property appears to be the fact that they have enclosed the subject property, together with their property, for 17 or 18 years. It is precisely this effort by the Defendants to acquire title by adverse possession for 20 years that has prompted the Plaintiffs to initiate this lawsuit at this time."[3]

---

[1]There are deeds in the record for all individual parcels except parcel 1.

[2]It is not clear whether the fence runs the entire perimeter of parcel 4, or whether the tract is open to the south where it adjoins parcel 3. It is sufficient for purposes of this action that the parcel is fenced-off from land not owned by the Schmidts.

[3]The Hochs continue to represent on appeal that the Schmidts claimed below that they obtained ownership of parcel 4 through 20-year possession. See 735 ILCS 5/13-101 (West 2010).

¶ 8        In their reply in support of the motion to dismiss, the Schmidts expanded their argument to dispute as well the Hochs' claim to title based on a deed. The trial court denied the motion to dismiss, but the record does not reflect a rationale for the decision.

¶ 9        The Schmidts subsequently filed an answer to the Hochs' complaint, pleading as affirmative defenses the same grounds on which they had moved for dismissal. The Hochs then moved for summary judgment, claiming that it was undisputed that (1) they received a trustee's deed dated August 6, 2003, that specifically included parcel 4; (2) they and their immediate predecessors in interest to parcel 2 paid the taxes on parcel 4 for a combined seven successive years, as required by section 13-110; and (3) the October 22, 1987, deed that the Schmidts received from their immediate predecessors in interest, Tadeusz Szydlowski and Maria Galbarski, specifically excluded parcel 4. In opposition to summary judgment, the Schmidts again asserted that parcel 4 was, because of the fence enclosing it, not "vacant and unoccupied" per section 13-110. The Schmidts also submitted an affidavit from Charles Black, who averred that, to the best of his knowledge, he never owned parcel 4.

¶ 10       An October 20, 2006, order by the trial court indicates that the summary judgment motion was heard in court. No transcript of the hearing, however, appears in the record. On November 1, 2006, the trial court entered a written order granting summary judgment for the Hochs, quieting title to parcel 4 in their favor. The order characterizes the summary judgment as "partial" but does not state what issues were resolved. The court included in the order language from Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) necessary to authorize an appeal from "a final judgment as to one or more but fewer than all the parties or claims."

¶ 11       The Schmidts moved the court to reconsider the summary judgment ruling, and also moved for leave to file a counterclaim. They represented that they had located Lillian Boehme's living heirs, Gloria Ruth Fisher and James Griffin, and had obtained from them deeds to parcel 4 as well as assignments of their interests in the property. The Schmidts argued that, based on the documents, they should "remain in the case in a different capacity, as assignees," and that it would be "premature" for the court to require them to appeal the summary judgment ruling. Therefore, the Schmidts asked the court to strike the Rule 304(a) language from its order. The court struck the language and granted the Schmidts leave to file a counterclaim.

¶ 12       In their counterclaim, the Schmidts alleged that, subsequent to the summary judgment ruling, they acquired title to parcel 4 from Fisher and Griffin. The Schmidts attached quitclaim deeds dated December 14, 2006, from Fisher and Griffin purporting to convey parcel 4. The Hochs moved to dismiss the counterclaim since the Schmidts had failed to plead as assignees of Fisher and Griffin. The court granted the motion to dismiss with leave to refile. The court also denied the Schmidts' motion to reconsider the summary judgment ruling. The Schmidts subsequently filed an amended counterclaim styling themselves as the

As we read the record, however, the Schmidts cited the existence of the fence only to defeat the Hochs' claim to possession under the limitations provision in section 13-110.

assignees of Lillian Boehme.

¶ 13    After notice by publication, and the failure of any additional parties to claim an interest in parcel 4, the trial court entered a default judgment against "the unknown others" named in the Hochs' complaint.

¶ 14    The case proceeded to an evidentiary hearing. Numerous deeds were admitted into evidence. As noted, the Hochs and the Schmidts all trace their claims of title to Lillian Boehme. The succession of title can be divided into three main phases. First, there is the succession from Ben and Henrietta Jacoby, through Lillian Boehme, to Theodor and Mila Kotiw. By warranty deed dated August 31, 1938, the Jacobys conveyed to Joseph Sikes a tract of land, which, as initially described, was inclusive of all the tracts numbered in the appendix to this opinion. However, a proviso at the end of the legal description reads: "excepting and reserving therefrom the East 20 feet thereof to be used as a private road." By these terms, parcels 6, 7, and 8 (which at that point were not distinguished from each other) were excluded. An identical exception appears in the February 7, 1939, warranty deed from Joseph and Lois Sikes to Max and Lillian Boehme. The September 25, 1954, warranty deed from Lillian Boehme (now a widow) to Theodor and Mila Kotiw contains an added exception: "excepting and reserving therefrom the East 20 *and the North 20 feet* thereof to be used as a private road" (emphasis added). The italicized language excepts parcels 4, 5, and 9 (which at that point were not distinguished from each other). Therefore, all of parcels 4, 5, 6, 7, 8, and 9 were excluded from the September 1954 conveyance from Lillian Boehme to the Kotiws.

¶ 15    The record contains no evidence of any other conveyances by Lilian Boehme or her heirs until the December 2006 quitclaim deeds from Griffin and Fisher to the Schmidts. William Doland, who prepared defendants' exhibit No. 1, testified that he examined the deeds dating from when the property depicted in the exhibit was still a single parcel. He was asked, "Prior to the time [the Schmidts] obtained quitclaim deeds [from Griffin and Fisher], did you ever find a deed out for the Boehme property by William Boehme of the 20-foot area known as a private road commencing at the northwest corner and going to the northeast corner?"[4] Doland said no.

¶ 16    The second phase of conveyances consisted of three deeds from the 1960s. Like the earlier deeds, they purport to convey the entire Boehme property, with a reservation for the north and east 20-foot strips. The third deed, dated November 2, 1967, conveys the property to Peter and Sophie Kulis.

¶ 17    The third main phase of conveyances began when the Kulises subdivided the Boehme property and sold parcels 2 and 3 to separate parties. The first branch of the third phase began

---

[4]There is no "William" Boehme mentioned elsewhere in the record. Most likely, counsel either misspoke or "Lillian" was mistakenly transcribed as "William." This aside, a more pertinent question would have been whether, prior to the December 2006 quitclaim deeds, there was any conveyance of the 20-foot strip by Lillian or Max Boehme or their heirs. At least in the record before us, there is no evidence of any earlier conveyance by the Boehmes or their heirs of any portion of the north or east 20-foot strip.

when, by warranty deed dated July 22, 1974, the Kulises conveyed parcel 3 to Tadeusz and Maria Szydlowski. The deed reserved "the East 20 feet and the North 20 feet thereof to be used as a private road." The October 22, 1987, warranty deed from Tadeusz Szydlowski and Maria Galbarski (formerly Szydlowski) to the Schmidts has an identical property description and reservation.

¶ 18       The second branch of the third main phase commenced with three deeds dated November 1, 1976, from the Kulises to Peter and Rita Lazzari. The first is a warranty deed that describes parcel 2 but excepts

"the North 20.00 feet of the West 252.07 feet of the East 749.91 feet, and the East 20.00 feet of the South 243.00 feet of the North 428.00 feet (as measured along the North and East lines thereof), of that part of said Southwest 1/4 lying South of the South line of the tract of land conveyed by C. Ben Jacoby and wife aforesaid, all in McHenry County, Illinois."

That is, the deed excepts parcels 5 and 7. These parcels were, however, conveyed separately to the Lazzaris by two quitclaim deeds of the same date.

¶ 19       Subsequently, by three deeds dated July 3, 1985, with property descriptions identical to the three November 1976 deeds, the Lazzaris conveyed parcels 2, 5, and 7 to Howard and Aisha Hinman. In June 1988, the Hinmans conveyed all three parcels to Charles and Lee Ann Black. On this occasion, only two deeds were used: a warranty deed for parcel 2 and a quitclaim deed for both parcels 5 and 7. Parcels 2, 5, and 7 were identified as parcels A, B, and C, respectively. The descriptions of the individual parcels were the same as those in the July 1985 deeds.

¶ 20       In March 1995, the Blacks deeded all three parcels to a trust. They used a single deed that identified the parcels, again, as A, B, and C, using the same descriptions appearing in the June 1988 deeds.

¶ 21       The August 6, 2003, trustee's deed to the Hochs likewise combined parcels 2, 5, and 7, labeled once again as A, B, and C. Joe Hoch testified that, when he reviewed the August 2003 deed at closing, he realized that none of the legal descriptions included parcel 4. He asked the Blacks to sign a quitclaim deed for the parcel, and they agreed. Later, however, McHenry County personnel informed Joe that the deed had to come from the trust. The trust then issued a deed, which apparently was backdated to August 6, 2003. The deed, we note, describes three parcels: A, B, and C. Parcel A includes both parcel 2 and parcel 7. Parcel B is parcel 5. Parcel C is parcel 4. The description of parcel 4 in this second trustee's deed of August 2003 is identical to the description of parcel 4 in the December 2006 quitclaim deeds from Griffin and Fisher to the Schmidts, which we quote below.

¶ 22       Joe Hoch acknowledged that, when he purchased the parcels from the trust, parcel 4 was already enclosed with a fence. Aware of the law on adverse possession, Joe hired an attorney to file a quiet-title action. Hoch identified a photograph of his property showing a pile of asphalt shavings on his property near the fence around parcel 4. Hoch testified that he planned to use the shavings to build a road on parcel 4 to access the north end of his property.

¶ 23       During their cross-examination of Hoch, the Schmidts moved to introduce the affidavit of Charles Black that they had submitted during the summary judgment proceedings. The

trial court declined to admit the affidavit, noting that it would not revisit the issues decided on summary judgment.

¶ 24    Linda Schmidt testified that she and her husband purchased parcel 3 in 1987 and parcel 1 in 1996. When they purchased parcel 3, the Schmidts believed that they were also purchasing parcel 4. In 1988, the Schmidts erected a fence around parcel 3. Some years later, they fenced in parcel 4. Schmidt testified that she and her husband currently raise cattle on parcel 4.

¶ 25    When shown the October 1987 warranty deed from Tadeus Szydlowski and Maria Galbarski, Linda acknowledged that the deed excluded both the northern 20 feet and the eastern 20 feet of parcel 3. Linda testified that she later obtained quitclaim deeds for those tracts from Griffin and Fisher. Each of the two December 2006 quitclaim deeds from Griffin and Fisher describes three parcels: A, B, and C:

"Parcel 'A':

Part of the Northeast Quarter of the Southwest Quarter of Section 29, Township 44 North, Range 9, East of the Third Principal Meridian described as follows: Commencing at a point located at the intersection of the Easterly line of the said Northeast Quarter of the Southwest Quarter and the Southerly line of Collinwood Subdivision according to the play [*sic*] thereof as Document #517657 in McHenry County, Illinois; thence Westerly along the Southerly line of said Collinwood Subdivision for a distance of 497.84 feet; then Southerly along a line parallel with the Easterly line of said Northeast Quarter of the Southwest Quarter for a distance of 20.00 feet; thence Easterly along a line parallel with the Southerly line of said Collinwood Subdivision for a distance of 497.84 feet; thence Northerly 20.00 feet along the Easterly line of said Northeast Quarter of the Southwest Quarter to the point of Beginning. All containing .2285 acres more or less in McHenry County, Illinois.

Parcel 'B':

The North 20.00 Feet of the West 252.07 feet of the East 749.91 Feet (as measured along the North and East lines thereof), of that part of the Southwest fractional 1/4 of Section 29, Township 44 North, Range 9, East of the Third Principal Meridian lying South of the South line of a tract of land conveyed by C. Ben Jacoby and wife to Anna Dianis by Warranty Deed dated February 21, 1922, and recorded in Book 164 of Deeds, Page 307, in McHenry County, Illinois.

Parcel 'C':

The North 20.00 Feet, except the East 749.91 Feet measured along the North and East lines of that part of the Southwest fractional quarter of Section 29, lying South of the South line of a tract of land conveyed by C. Ben Jacoby and wife to Anna Dianis by Warranty Deed dated February 21, 1922[,] and recorded in Book 164 of Deeds, Page 307, in McHenry County, Illinois and East of the East line of a private road (Commonly known as Little Road) as shown on the Plat of Jacoby's Second Fox River addition, according to the Plat thereof recorded August 31, 1923, as Document 60326, in Book 4 of Plats, Page 103, all in McHenry County, Illinois."

Parcels A, B, and C appear to be, respectively, parcels 4, 5, and 9–that is, the entire north 20-

foot strip of the Boehme property.

¶ 26    The September 17, 2010, deposition of Griffin was admitted at trial.[5] Griffin testified that he is the grandson of Lillian Boehme and that Fisher is his sister. Griffin recalled that Lillian owned property in Illinois. Griffin had been under the impression that Lillian sold all of her Illinois property within her lifetime. It was a "complete surprise" to Griffin to learn of the existence of the 20-foot strip of land. Griffin had "no idea" why his grandmother would have retained that strip of land. Griffin confirmed that he and his sister executed quitclaim deeds conveying the 20-foot strip to the Schmidts.

¶ 27    In addition to the foregoing evidence of conveyances, there was documentation, introduced by the Hochs, that they or their predecessors in interest as to parcel 2 have paid the property taxes on parcel 4 since 1994. Though section 13-110 of the Act was not specifically cited at trial, the Hochs asserted as follows in closing argument:

> "The evidence is that the taxes have been paid on [parcel 4] at least from 2000–from 1994 on *** by the Blacks and/or the Hochs. So we have more than seven years of payment of taxes, and we have color of title.
>
> * * *
>
> *** For a long time [the Hochs] have paid taxes on that ***. And [the Hochs] have–have possessed it for–and their predecessors for over seven years, clearly, they own that."

¶ 28    After taking the matter under advisement, the trial court issued a memorandum opinion concluding that the Hochs had a superior claim of title to parcel 4 than did the Schmidts. The court found:

> "The deeds in evidence show a chain of titile [sic] from Lillian Boehme through several grantees and ultimately to Charles Black and Lee Ann Black. The Blacks conveyed the entire parcel into a trust. It was the Fifth [T]hird Bank as trustee of the property that conveyed the parcel to the plaintiffs."

¶ 29    The trial court then quoted the property descriptions for parcels A, B, and C from the first trustee's deed dated August 6, 2003. The court determined that parcel 4 "clearly" was excluded from the legal description of parcel A, but that parcel 4 and parcel B were "one and the same property and that the subject property was included in the assemblage of real estate conveyed to the Hochs." The court found that "[n]o subsequent deed attempted to divest the Hochs of their ownership of [parcel 4]." The court further determined that, though the Schmidts obtained from the heirs of Lillian Boehme quitclaim deeds for parcel 4, the heirs had no interest in that parcel to convey. The court then made the following findings:

> "1.) Joseph Hoch and Linda Hoch clearly are the owners of the subject property;
>
> 2.) Roy Schmidt and Linda Schmidt did not acquire any interest in the subject property by virtue of the several quit claim deeds that they acquired from the heirs of Lillian Boehme[;] [and]

_____

[5]A second, October 2009, deposition of Griffin is included in the appendix to the Schmidts' opening brief on appeal. As far as we can tell, the October 2009 deposition was not admitted at trial.

-8-

3.) The claim of ownership to the subject property by Roy Schmidt and Linda Schmidt is a cloud on the title of the Plaintiffs[,] Joseph Hoch and Linda Hoch[,] that should be removed."

The court directed counsel for the Hochs to prepare "an appropriate order or decree in accordance with the findings in this memorandum decision."

¶ 30    The Schmidts filed a motion to reconsider. The Hochs opposed the motion and moved to clarify the memorandum opinion to reflect that the court "already found that the Hochs had color of title and payment of real estate taxes for in excess of seven years."

¶ 31    Subsequently, the trial court issued its written judgment. The judgment stated in relevant part:

"THE COURT FINDS that the Plaintiffs, JOE HOCH and LINDA HOCH[,] have superior title to the disputed property claimed by the Schmidt Defendants[ ] as assignees of the Lillian Boehme heirs, James Griffin and Gloria Fisher;

THE COURT FINDS that the Plaintiffs, JOE HOCH and LINDA HOCH, have color of title pursuant to a series of deeds in their favor recorded in 2003 and 2004, and have paid taxes (or their predecessors have) on the disputed property for a period in excess of seven years;

THE COURT FINDS that the quit-claim deeds obtained by the Schmidt Defendants from the heirs of Lillian Boehme transferred no interest in the subject property and are inferior to the title held by the Hochs ***."

The court then commented that it had previously entered summary judgment "against the Schmidts on their claims and defenses of ownership, independent of the after-acquired deeds." The court concluded that the Schmidts' claim of ownership to parcel 4 was a cloud on the Hochs' title and should be removed.

¶ 32    The Schmidts filed this timely appeal.


¶ 33                                    ANALYSIS

¶ 34    One of the Schmidts' two main contentions on appeal is that the Hochs have not proven ownership of parcel 4 under section 13-110 of the Act. The Schmidts address the issue as if it had been decided at trial, not on summary judgment. The section 13-110 issue was in fact raised in the summary judgment proceeding, but the court's written judgment granting partial summary judgment to the Hochs does not reflect any resolution of that issue. When we inquired at oral argument as to what exactly was decided on summary judgment, the parties agreed that the section 13-110 issue was *not* decided at that stage. The parties characterized the summary judgment as based strictly on the deeds submitted during that proceeding, and they further agreed that the section 13-110 issue was in fact decided at trial.

¶ 35    Yet, while at trial the court accepted evidence and argument from the Hochs on matters relevant to a section 13-110 inquiry–namely, payment of taxes, color of title, and

possession[6]–the court's memorandum opinion after trial was concerned solely with the meaning of the deeds introduced at trial. Subsequently, the Hochs moved to clarify the court's decision to reflect that the court had "*already found* that the Hochs had color of title and payment of real estate taxes for in excess of seven years" (emphasis added).[7] The court then issued a written judgment finding, *inter alia*, that the Hochs "have color of title pursuant to a series of deeds in their favor recorded in 2003 and 2004, and have paid taxes (or their predecessors have) on the disputed property for a period in excess of seven years." We will not speculate whether the court was reiterating a determination made at an earlier stage of the proceedings, as the parties do not dispute that the section 13-110 issue was not resolved until trial, and the record is consistent overall with that position. Therefore, we turn to review the court's section 13-110 determination made at trial.

¶ 36 Section 13-110 is one of several provisions in the Act that vest ownership of land in a person though his proof of legal title is deficient. Perhaps the most familiar of the limitation provisions is section 13-101 of the Act (735 ILCS 5/13-101 (West 2010)), which incorporates the common-law doctrine of adverse possession. See *Joiner v. Janssen*, 85 Ill. 2d 74, 81 (1981) ("What is essential in order to establish title under the 20-year adverse-possession doctrine incorporated in [section 13-101] is that there must be 20 years' concurrent existence of the five elements: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner."). Section 13-110 states:

"Vacant land–Payment of taxes with color of title. Whenever a person having color of title, made in good faith, to vacant and unoccupied land, pays all taxes legally assessed thereon for 7 successive years, he or she shall be deemed and adjudged to be the legal owner of such vacant and unoccupied land, to the extent and according to the purport of his or her paper title. All persons holding under such taxpayer, by purchase, legacy or descent, before such 7 years expired, and who continue to pay the taxes, as above set out, so as to complete the payment of taxes for the such term, are entitled to the benefit of this Section. However, if any person, having a better paper title to such vacant and unoccupied land, during the term of 7 years, pays the taxes assessed on such land for any one or more years of the term of 7 years, then such taxpayer, his or her heirs, legatees or assigns, shall not be entitled to the benefit of this Section." 735 ILCS 5/13-110 (West 2010).

¶ 37 The Hochs claim that the case law is unclear on what standard of review governs section 13-110 determinations. They suggest that there is authority for both the manifest-weight standard and the clearly-erroneous standard (but maintain that they prevail under either standard). As authority for the clearly-erroneous standard, the Hochs cite *Dotson v. Former*

---

[6]The requirement of possession is not expressed in the text of section 13-110, but rather is a judicial gloss. See *infra* ¶ 40.

[7]The Hochs' suggestion, in their motion to clarify, that the trial court previously resolved the issue, presumably at summary judgment, is difficult to reconcile with their presentation at trial of evidence and argument on the requisites of section 13-110.

*Shareholders of Abraham Lincoln Land & Cattle Co.*, 332 Ill. App. 3d 846 (2002), where the First District of the Appellate Court discussed what standard of proof and what standard of review govern determinations under section 13-110. The court in *Dotson* had conflicting suggestions from the parties as to the standard of review. The plaintiff suggested review for abuse of discretion, while the defendants suggested that the proper standard was whether the trial court's judgment was clearly erroneous. *Id.* at 854-55. Attempting to resolve the issue, the court said:

> "We failed to locate any case affirmatively stating the standard of review in cases brought pursuant to section 13-110 of the Limitations Act. In addition to the cases cited by defendants, we find persuasive the similarity between adverse possession cases (see 735 ILCS 5/13-101 (West 1996)) and those brought under section 13-110. In adverse possession cases, all presumptions are made in favor of the record titleholder, and overcoming the presumption requires strict proof of the element[s], which may not be made out by inference or implication. [Citation.] The burden of proof upon an adverse possessor requires each element be proved by clear and unequivocal evidence. [Citation.] Since our supreme court has not explained 'clear and unequivocal proof,' courts have applied the clear and convincing burden of proof in adverse possession cases. [Citation.]

> We conclude this is the appropriate standard in claims brought under section 13-110 of the Limitations Act as well. Many early cases addressing predecessor sections to section 13-110 indicate all presumptions should be made in favor of the holder of legal title, and, as against him, no presumptions should be made in favor of the holder of mere color of title. [Citations.]" *Id.* at 855.

The court concluded that determinations under section 13-110 should be reviewed for whether they are clearly erroneous. *Id.*

¶ 38    We agree with the *Dotson* court that, given the similarity between the inquiries under sections 13-101 and 13-110, the clear-and-convincing standard is the proper standard of proof under section 13-110. As further support for *Dotson*'s conclusion, we note *McCauley v. Mahon*, 174 Ill. 384, 386 (1898), a case brought under a predecessor of section 13-110, where the supreme court commented: "It is well settled by the decisions of this court that, as the payment of taxes under color of title operates to defeat the paramount and all other titles when relied on, the proof must be clear and convincing." Clear-and-convincing evidence is "the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995). "Although stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." *Id.*

¶ 39    We agree with *Dotson* as to the standard of proof, but not as to the standard of review. *Dotson* cited no direct authority that section 13-101 determinations are subject to clearly-erroneous review, but, relying on an administrative review case, seemed convinced that the standard was appropriate because (as the court opined) section 13-101 issues present mixed questions of law and fact. See *Dotson*, 332 Ill. App. 3d at 854-55 (citing *AFM Messenger*

*Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001)).[8] *Dotson* overlooked that it is well established in the case law that determinations under section 13-101 are reviewed for whether they are against the manifest weight of the evidence. See, *e.g.*, *Joiner*, 85 Ill. 2d at 79 (determining that the trial court's findings were "not against the manifest weight of the evidence"); *Duncan v. Abell*, 340 Ill. 613, 616 (1930) (question on appeal was "whether [the trial court's finding] is manifestly against the weight of the evidence"); *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1036 (1996) ("On review, a court will not disturb the findings of a trial court as to the proof of [the elements of adverse possession] unless the findings are against the manifest weight of the evidence."). Following this case law, we disagree with *Dotson* and hold that the reviewing court must judge section 13-110 determinations, like section 13-101 determinations, under the manifest-weight standard. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 70.

¶ 40　　　The Hochs note that, for the seven years preceding trial in this matter, either they or their predecessors in interest as to parcel 2 paid the taxes on parcel 4. Regardless, their claim under section 13-110 fails. It is undisputed that the Schmidts have fenced off parcel 4 from neighbors' parcels since the late 1980s and are currently raising cattle on the land. The Schmidts note "a long-standing judicial construction" of section 13-110 "requiring a person seeking to perfect title under section 13-110 [to] also take possession of the property" (*Dotson*, 332 Ill. App. 3d at 854). *Dotson* cited *Slatin's Properties, Inc. v. Hassler*, 53 Ill. 2d 325, 328 (1972) ("Numerous decisions of this court have construed [section 13-110] as requiring that the person having color of title made in good faith and thereafter paying the legally assessed taxes for seven successive years must also take possession of the property."). The Schmidts note that the Hochs have never taken possession of parcel 4. The Hochs respond that they effectively took possession of parcel 4 by piling asphalt shavings near the fence, "as anything more would have required the Hochs' [*sic*] to forcibly remove the Schmidts' fencing." The reason, however, that possession of parcel 4 was not practicable for the Hochs was that the land was not "vacant and unoccupied" as section 13-110 requires. A fence serves as notice of actual occupancy. *Jones v. Unknown Heirs or Legatees of Fox*, 313 Ill. App. 3d 249, 257 (2000) (fence erected by the defendants raised question whether the land was "vacant and unoccupied" under section 13-110; therefore, the defendants established the existence of a meritorious defense to the plaintiff's section 13-110 claim, and hence the default judgment entered against the defendants was vacated (citing *Chicago Title & Trust Co. v. Darley*, 363 Ill. 197, 201-02 (1936) (enclosing property by fence can constitute an act of dominion over the property so as to establish adverse possession))). The Hochs failed to prove by clear and convincing evidence a claim to parcel 4 under section 13-

---

[8]The supreme court has remarked that it has "cited the clearly erroneous standard of review only in cases governed by the Administrative Review Law [(735 ILCS 5/3-101 *et seq.* (West 2010))]" and has "limited the application of that standard to reviewing administrative decisions on mixed questions of fact and law." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 542 (2007).

110. The trial court's judgment is against the manifest weight of the evidence.

¶ 41    Next, we determine if the Hochs proved a superior claim to parcel 4 through the chain of title. An action to quiet title in property is an equitable proceeding in which a party seeks to remove a cloud on his title to the property.[9] *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52 (2009). "A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." *Id.* To prevail in an action to quiet title, the plaintiff must actually have title, though it need not be perfect. *Id.* The plaintiff must recover on the strength of his own title rather than on defects in the defendant's title. *Diaz v. Home Federal Savings & Loan Ass'n of Elgin*, 337 Ill. App. 3d 722, 726 (2002).

¶ 42    Our review requires us to construe a series of deeds. The parties do not dispute that these deeds represent the complete chain of title for the parcels in question dating back to 1938. Where a deed is ambiguous, extrinsic evidence is admissible to ascertain the intent of the grantor and grantee. *Id.* at 725. Whether an ambiguity exists is a question of law, which we review *de novo*. *Id.* There is no indication that the trial court found any ambiguity in the deeds. At trial, there was ample evidence apart from the deeds, but none of it was directed toward clarifying any of them. We ourselves find none of the deeds to be ambiguous. Therefore, our review of what interests passed under the deeds themselves is *de novo*.

¶ 43    From our review of the deeds, the Kulises were the first to subdivide the Boehme property into parcels 2 and 3, and there is no dispute that the Hochs and the Schmidts are in the respective lines of succession of those separate parcels. From the Kulises, the Boehme property can be traced back through the Sarabyns to the Kotiws, who received the property from Lillian Boehme. The September 25, 1954, warranty deed to the Kotiws conveys all of the Boehme property "excepting and reserving therefrom the East 20 and the North 20 feet thereof to be used as a private road." This language excepts all of parcels 4, 5, 6, 7, 8, and 9 (which at the time were not distinguished from each other) from the September 1954 conveyance. Notably, the Hochs admit that Lillian "retained the twenty-foot strip of land." Parcels 4 through 9, we conclude, remained with Lillian. Moreover, there is no evidence in the record of any conveyance by Lillian or her heirs until the December 2006 quitclaim deeds conveying parcels 4, 5, and 9 to the Schmidts. Since ownership of parcels 4 through 9 remained with Lillian and her heirs, neither the Hochs nor the Schmidts could have received interests in those parcels by virtue of the chains of title stemming from the Kulises. The

---

[9]It is questionable whether this action is properly an action to quiet title. See *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 812 (1985) ("Where the property is not vacant and is not in the possession of the party seeking to remove the cloud from his title, the proper remedy is not an action for quiet title but rather an action in ejectment." (citing *McGookey v. Winter*, 381 Ill. 516, 526 (1943) ("It is well established that in chancery actions where the primary purpose of the litigation is to quiet the title in the plaintiff, there must be allegation and proof that such plaintiff was in possession when the suit was started, unless it be averred and proved that the premises were vacant or unoccupied."))). Parcel 4 is neither in the Hochs' possession nor vacant, but rather is occupied by the Schmidts, who have fenced it off from neighbors' parcels. We note, however, that the character of this action has not been questioned by the parties or the trial court.

Blacks, the immediate source of the Hochs' claim of title to parcel 4, had no interest in that parcel to convey. Rather, the Schmidts obtained ownership of parcel 4 through quitclaim deeds from Lillian's heirs.[10]

¶ 44     The trial court appears to have believed that the first trustee's deed obtained by the Hochs in August 2003 encompassed parcel 4. The trial court read parcel A as initially including parcels 2 and 4, but then excepting parcel 4, which (the court thought) was conveyed separately as parcel B. The legal description of parcel A, however, does not include parcel 4, and neither does that of parcel B. Thus, parcel 4 does not fall within the legal descriptions in the first trustee's deed from August 2003. Even Joe Hoch conceded this at trial, and testified that the omission of parcel 4 prompted him to obtain a second deed from the trust. The trial court erred.

¶ 45     The Hochs, however, assert that "Lillian Boehme intended to abandon the strip of property." The only legal authority they cite for this assertion is *Diaz*, where the plaintiff, the owner of a restaurant, sued a bank to quiet title to a strip of land near both the bank and the restaurant. Both parties ultimately traced their claims of title to a single grantor, Erastus Tefft, who made conveyances to the parties' respective predecessors in interest. The bank's immediate predecessor in interest was a railroad, which had placed tracks on the strip of land. Construing the relevant deeds, we determined that the plaintiff received the property in fee simple while the railroad had at best an easement in the property. *Diaz*, 337 Ill. App. 3d at 729-31. We next determined that, through the following three actions, the railroad manifested an intent to abandon the easement: (1) ceasing operations along the tracks in late 1997 or early 1998; (2) moving the tracks from the easement in the middle of 1998; and (3) attempting to convey part of the easement to the bank in March 1999. *Id.* at 731-32. The bank, claiming that this was insufficient evidence of an intent to abandon, cited *Department of Conservation ex rel. v. Fairless*, 273 Ill. App. 3d 705 (1995). We did not discuss the facts of *Fairless* other than to note that the case was distinguishable because the right-of-way was held by the railroad in fee simple rather than as an easement. *Diaz*, 337 Ill. App. 3d at 732 (citing *Fairless*, 273 Ill. App. 3d at 716). Notably, *Fairless* itself distinguished another case, *Schnabel v. County of Du Page*, 101 Ill. App. 3d 553 (1981), on the ground that the latter involved a railroad right-of-way held as an easement, not in fee simple. See *Fairless*, 273 Ill. App. 3d at 716. Here, the Hochs do not dispute that Lillian Boehme retained in the September 1954 conveyance a fee simple interest, not an easement, in the north and east strips that included parcel 4. *Diaz* expressly denies that it is addressing abandonment of a fee simple interest. The Hochs, therefore, have cited no pertinent authority.

¶ 46     We note that *Fairless* did assume, *arguendo*, that the principles governing abandonment of easements could apply to fee simple interests, and the court proceeded to find no abandonment in any case. See *id.* at 716-17. The court noted that " 'mere nonuse for a fixed period is not of itself sufficient to establish an abandonment.' " *Id.* at 716 (quoting *Schnabel*, 101 Ill. App. 3d at 558). The court held that the railroad, simply by ceasing to run trains on

[10]Counsel for the Hochs conceded at oral argument that, based strictly on the deeds, *i.e.*, apart from the Hochs' "adverse possession activity," the Schmidts would have "superior title."

the property and eventually removing the tracks, did not signify an intent to abandon the property. *Id.* Assuming, like the court in *Fairless*, that the principles of abandonment of easements apply here, we note that the Hochs do not even rely on cessation of use or dismantlement of the means of use. Rather, they rely solely on the fact that Lillian Boehme never constructed the private road referenced in the September 1954 deed to the Kotiws. This, standing alone, does not persuade us that Lillian Boehme intended to abandon her fee simple interest in the north strip. See *id.* at 715 (" 'Abandonment occurs *** when nonuse is accompanied by acts which manifest an intention to abandon and which destroy either the object for which the easement was established or the means of its enjoyment.' " (Emphasis omitted.) (quoting *Schnabel*, 101 Ill. App. 3d at 558)).

¶ 47    The Hochs further contend that "a quiet title proceeding is equitable in nature," and that "[i]t would be inequitable to allow the Schmidts, who failed on their repeated direct attempts to acquire the property, to do so indirectly by virtue of quit claim deed acquired after they lost their direct claim on summary judgment." We do not know what the Hochs mean by "repeated direct attempts to acquire the property." The Hochs were the ones who initiated this lawsuit. Following summary judgment in their favor (on what precise issue(s), however, we do not know), the Schmidts moved to file a counterclaim based on quitclaim deeds obtained from the heirs of Lillian Boehme. The Hochs do not contend that the Schmidts should not have been allowed, under the rules of civil practice, to file their counterclaim. Nor do we see any significance in the fact that the Hochs acquired their deed to parcel 4 before the Schmidts obtained theirs. There is no inequity in holding that the Hochs have failed to prove superior title. The Hochs need title in order to quiet title (see *Gambino*, 398 Ill. App. 3d at 52), and, as we have concluded, they received no interest in parcel 4 from the Blacks.

¶ 48    As the Hochs failed to prove a claim to parcel 4 under section 13-110, and also failed to demonstrate that they received an interest in parcel 4 through the chain of title, we hold that the trial court erred in quieting title in favor of the Hochs. As the Schmidts demonstrated superior title, the court should have quieted title in their favor.

¶ 49                                        CONCLUSION

¶ 50    For the foregoing reasons, we reverse the judgment of the circuit court of McHenry County and remand for entry of judgment for the Schmidts on their counterclaim to quiet title.

¶ 51    Reversed and remanded with directions.